THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. SAM MONICH, PLAINTIFF IN ERROR.

Argued June 29, 1906—Decided July 11, 1906.

1. Where a dying declaration is offered in evidence, the preliminary question of fact, whether the declarant was under a sense of impending death, is for the determination of the trial court, and its

finding, if supported by any legal evidence, is not reviewable by ordinary writ of error.

2. Where the trial court determines that a dying declaration was in fact made under a sense of impending death, the defendant is not entitled to have the jury instructed that they may review such determination and disregard the declaration if they come to a different conclusion from that reached by the trial court.

On error to Morris County Court of Oyer and Terminer.

For the plaintiff in error, *Charlton A. Reed.*

For the defendant in error, *Charles A. Rathbun,* prosecutor of the pleas.

The opinion of the court was delivered by

PITNEY, J. The defendant below, having been convicted of the crime of murder in the first degree, and thereupon sentenced to death, brings the record of that conviction to this court for review. Besides the strict record, he has brought up with his writ of error certain bills of exception sealed at the trial raising questions concerning the admissibility in evidence of declarations made by the deceased after receiving the mortal wounds, and in the absence of the defendant, and also certain exceptions respecting the instructions of the trial judge to the jury. The entire record of the proceedings had upon the trial is not brought up as permitted by section 136 of the Criminal Procedure act (*Pamph. L.* 1898, *p.* 915), and our review of the conviction must therefore proceed as on ordinary writ of error. There are but five assignments of error, and these are rested upon the bills of exceptions. Three of them concern the admission of the declarations already alluded to. The other two refer to the charge.

Upon the argument here the learned prosecutor of the pleas insisted that the declarations were admissible as part of the *res gestæ,* and also that they were admissible as dying declarations. The former question we have not found it necessary to consider, having come to the conclusion that the trial court

committed no legal error in admitting them as dying declarations.

The circumstances disclosed in evidence were briefly as follows: The deceased was an able-bodied woman of middle age, named Hattie Decker. She was widowed, and lived upon a farm with her parents, Mr. and Mrs. Wilbur Kayhart. Between six and half-past six in the evening of January 17th, 1906, after having taken supper with her parents, she took a lighted lantern with the avowed purpose of going from the house to the barn to fasten up her dog. Shortly afterwards, as Mr. Kayhart testified, he heard the firing of two or three shots, went quickly to the door, and found his daughter standing there, with the still lighted lantern in her hand, endeavoring to enter the house, but unable to do so for want of strength. To him she said: "Oh, Pa, I am shot with a bullet; I am dying." He asked her: "For God's sake, who shot you?" And she answered: "Sam shot me" (meaning the defendant). At this time, as appeared from medical testimony previously introduced, she was suffering from two pistol-shot wounds in the body, one in the right shoulder and the other in the chest. The bullet that caused the latter wound had entered and passed through the thoracic cavity, penetrating the lungs, severing arteries and veins, fracturing the fifth rib and the shoulder blade, and lodging under the skin at the back. From this wound she died within a few hours.

Kayhart's testimony that she declared the defendant had shot her was admitted over objection, and an exception was thereupon sealed.

Nine other witnesses were produced who saw her during the same evening. Their testimony tended to show that she was very weak and sinking. They swore that she said in their hearing at different times that she was shot; that she was convinced she was about to die, and that Sam had shot her; that she knew it was Sam, because she had seen him. Exceptions were likewise sealed to the admission of these declarations.

The ground upon which evidence of this character is ad-

mitted in homicide cases was stated with sufficient clearness by Chief Justice Green, in *Donnelly* v. *State, 2 Dutcher* 463 (at *p.* 497), as follows: "Dying declarations derive their sanction as testimony from the fact that they are made under the apprehension of approaching dissolution, in the view and expectation of speedy death, the situation of the party under such solemn circumstances creating a sanction equally impressive with that of an oath administered in a court of justice [citing authorities]. It is essential, therefore, to the admissibility of these declarations, and is a preliminary fact to be proved by the party offering them, that they were made under a sense of impending death. If not so made, they are not admissible in evidence. It consequently becomes necessary that the circumstances under which the declarations are made should be shown to the judge, it being his province to determine whether they are admissible. It is a question of competency which addresses itself to the court, and which must be met and decided by the court. If the declarations were in point of fact made under a sense of impending death, in view and expectation of the immediate approach of that solemn event, they are to be admitted in evidence. If they are not so made, they are to be excluded from the consideration of the jury." Upon review of the same case in this court, Mr. Justice Ogden said (*Id.,* at *p.* 617): "When the death wound is inflicted in secret, as was done in this case, no person can be expected to speak to the fact except the victim of the violence. His account of the circumstances of his injury, given *in articulo mortis,* when intelligently repeated to a jury, is received by them under the like sanction as all oral testimony is received, the sense of impending death being equivalent to the sanction of an oath."

With regard to the function of a court of review in the premises, Chief Justice Green made it plain (2 *Dutcher,* at *p.* 501.) that the question here is not a question of the weight of testimony, but whether there was evidence before the trial court which warranted it in admitting the evidence.

Upon this point we agree with the view expressed by Mr. Justice Dixon in the Supreme Court, in *Peak* v. *State,* 21

*Vroom* 231, where, after saying that the admissibility of such declarations depends upon the preliminary decision of the question whether they were made under a consciousness of impending death, he proceeds as follows: "Now, undoubtedly the preliminary question above referred to was one of fact. What state of mind must be shown to render a declaration admissible in evidence as a dying declaration is a question of law, but whether in a particular case that state of mind exists is a question of fact. The decision of that question cannot be reviewed on writ of error. But behind the decision of such a question, and necessarily entering into it, there is another question, viz., whether the evidence relative to the fact as such furnishes legal support for the decision rendered. This question is one of law, and therefore open to review on error."

In short, evidence of declarations admitted as dying declarations stands, as we think, upon precisely the same legal footing, so far as review on error is concerned, as testimony of confessions made by a defendant while in custody. In the case of such a confession, where its admissibility is challenged, the primary question for the determination of the trial court is the question of fact whether the defendant in confessing acted voluntarily, or, on the contrary, was under the influence of fear or hope. If there be any legal evidence to support the finding of the trial judge to the effect that the confession was voluntarily made, his finding is not subject to legal exception, and not reviewable upon a writ of error that rests alone upon such an exception. *State* v. *Young,* 38 *Vroom* 223, 227, 228; *State* v. *MacQueen,* 40 *Id.* 522.

So, where it is proposed to introduce in evidence the opinion of a witness as an expert witness, the question whether he is an expert is a question of fact for the determination of the trial court, and if there be any legal evidence to support the finding, the admission of the opinion is not reviewable by ordinary writ of error. *State* v. *Arthur,* 41 *Vroom* 425, 427. If there be no legal evidence to support the finding, the error is one of law, and consequently reviewable. *Riley* v. *Camden and Trenton Railway Co.,* 41 *Id.* 289.

It is entirely manifest that in the case at hand there was abundant evidence to legally justify the determination of the trial court that the declarations of the deceased that were admitted in evidence were made under the apprehension of impending death. She was in fact mortally wounded. Her appearance foreshadowed the fatal result, and she declared that she was dying.

Nor were the declarations rendered inadmissible by the circumstance that when they were admitted it had already appeared in evidence that after the making of the declarations her attending physician held out to her some slight hope of recovery if she would be removed to a hospital for treatment. Evidence of a hope subsequently aroused was legally immaterial upon the question of her state of mind at the time the declarations were made. See 10 *Am. & Eng. Encycl. L.* (*2d ed.*) 368.

The only other matter requiring discussion is the refusal of the trial court to charge the jury that "before the jury can consider declarations made by the deceased as to the person who inflicted the mortal injury in the absence of such person, they must be convinced that the person making the declaration had an absolute conviction that death, as an absolute certainty, is immediately at hand. If there is the least hope, no matter how faint, the requisite certainty of belief does not exist." The effect of this instruction would have been to permit the jury to revise the finding of the trial court upon the question of fact whether the declaration was made under a sense of impending death, and to disregard the declaration if they disagreed with the conclusion of the judge upon this point.

Defendant's contention upon this head receives some countenance from a *dictum* of Justice Depue (afterwards Chief Justice), in *Roesel* v. *State,* 33 *Vroom* 216, 238, where, in discussing the admissibility in evidence of a confession made by the prisoner, he said: "If there be a conflict of evidence as to whether the confession was or was not voluntary, if the court decides that it is admissible, the question may be left to the jury, with the direction that they should reject it

if upon the whole evidence they were satisfied that it was not the voluntary act of the defendant." This *dictum* was based in part upon the charge of Mr. Justice Drake to the jury in State *v.* Guild, and the qualified approval of his instruction contained in the opinion of the Supreme Court in the same case. 5 *Halst.* 163, 181, 182.

It will be noticed that the language of Justice Depue just quoted indicates a permissible practice, not one that the defendant is entitled to have observed. In *Bullock* v. *State,* 36 *Vroom* 557 (at *p.* 567), the same learned jurist did, however, declare *obiter* that in cases of doubt the question *should be* left to the jury, with the instruction that they should reject the confession if upon the whole evidence they are satisfied that it was not the defendant's voluntary act. In other jurisdictions, where the practice is recognized of permitting the jury to review the finding of the trial court upon a preliminary question of fact on which depends the admission of a declaration or the like, the practice is commonly treated as discretionary with the trial court. In Massachusetts, for instance, it seems to have been adopted as a matter of grace to the defendant. *Commonwealth* v. *Cuffee,* 108 *Mass.* 285, 288; *Commonwealth* v. *Smith,* 119 *Id.* 305, 311; *Commonwealth* v. *Nott,* 135 *Id.* 269, 271; *Commonwealth* v. *Preece,* 140 *Id.* 276, 277. The opinion of Chief Justice Fuller, in *Wilson* v. *United States,* 162 *U. S.* 613, 624, likewise indicates his view that the practice is discretionary. See, also, 11 *Am. & Eng. Encycl. L.* (*2d ed.*) 497; 23 *Id.* 556.

In an opinion by the present Chancellor, speaking for this court, in *State* v. *Young,* 38 *Vroom* 223, 230, attention was called to the fact that the language above quoted from the Roesel case was *obiter dictum.* But since the Young case did not call for a decision upon the point, nothing more was done than to declare it still open to question whether, after the trial court has, upon the preliminary examination, determined the question of fact and admitted such a statement in evidence, it may be required to submit the same question of fact to the jury. The question is fairly raised in the present case by the refusal of the trial judge to accede to the request to

charge above mentioned, and in our opinion it admits of but one answer. The determination of the question whether a declaration that is offered as a dying declaration was in truth made under a sense of impending death, like the determination of the cognate question whether a defendant's confession was made voluntarily, is for the trial court, and not for the jury. The question relates to the admissibility of evidence, and, like all similar questions, is not reviewable by the jury.

Whether the deceased spoke the truth when she declared that the defendant had shot her was for the jury's determination. Whether the witnesses who testified that she made such a declaration testified truthfully was likewise for the jury to decide. But in our opinion, it was not their province to lay aside the evidence of her declarations upon coming to a conclusion that she was not impressed with a sense of impending death when she made them.

A single assignment of error remains undiscussed. It is without substantial basis, and was properly abandoned upon the argument.

The judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, J.J. 14.

*For reversal*—None.