## THE STATE v. MICHAEL LEO.

Argued November 3, 1909—Decided September 1, 1910.

1. Section 1 of the act concerning evidence provides that no person offered as a witness in any action of a criminal nature shall be excluded by reason of his having been convicted of crime, but permits such conviction to be shown on the cross-examination of the witness. or by the production of the record thereof, for the purpose of affecting his credit. *Held*, that a witness who admits on cross-examination that he has been convicted of crime is not entitled to weaken the effect of that admission by testifying that his conviction was illegal.

2. The fact that a prisoner who is upon trial for the murder of his wife looked upon her dead body at the time of her funeral, and touched and kissed it, is not admissible in evidence for the purpose of showing the existence of love for her during life.

3. A person on trial for murder is presumed to be innocent until he is found by the jury to have been guilty of a criminal homicide; but the presumption does not persist after that finding, and until the degree of his guilt is determined.

4. An instruction to the jury defining "reasonable doubt" as a doubt which would exist when the judgment of the jury, after a careful review of all the evidence, finds itself unconvinced of the guilt of the prisoner. is not erroneous.

5. An instruction to the jury upon the trial of a prisoner for the murder of his wife that if he either set fire to her clothing or caused fire to be set thereto for the purpose of producing her death, so that he might collect insurance which he had taken out upon her life, he was guilty of murder, and not manslaughter, is legally unobjectionable.

6. Error cannot be assigned upon the failure of a trial court to direct a verdict of acquittal in a criminal case, unless such instruction is asked and refused.

7. When an alleged dying declaration has been admitted in evidence, the truthfulness of the witnesses who testified to its having been made, and the truthfulness of the declaration itself, if it was made, are both of them questions for the jury.

On error to the Essex Oyer and Terminer.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and VOORHEES.

° For the plaintiff in error, *Riker & Riker.*

For the state, *Wilbur A. Mott,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error was indicted by the grand jury of Essex county for the murder of his wife, the specific charge being that he intentionally set fire to her clothing, or caused fire to be set thereto, thereby producing her death. The trial upon this indictment resulted in his conviction; the verdict being that he was guilty of murder in the second degree. We are now asked to set aside that conviction because (as it is alleged) of injurious errors committed by the trial court in its rulings upon evidence, and in the charge to the jury.

Two assignments of error are directed at rulings upon evidence. The first of them challenges the action of the trial court in refusing to permit one White, a witness produced upon the part of the defendant, and who admitted on his cross-examination that he had been convicted in the Essex Oyer and Terminer on an indictment for criminal conspiracy, to testify that his conviction was illegal. The first section of our Evidence act (*Pamph. L.* 1900, *p.* 362) provides that no person offered as a witness in any action of a criminal nature shall be excluded by reason of his having been convicted of crime, but permits such conviction to be shown on the cross-examination of the witness, or by the production of the record thereof, for the purpose of affecting his credit. The object of the legislature in permitting the conviction of a witness to be shown upon his cross-examination is, manifestly, to relieve from the necessity of producing the record thereof when the witness himself admits it. Whether the conviction is proved in the one way or the other, however,

the result is the same, to this extent—that it establishes the existence of a judicial record of his guilt. That was the effect of White's testimony in the present case. The existence of the record having been shown, the purpose of the excluded testimony was to destroy its value as evidence of the guilt of the witness. The trial court properly refused to permit this to be done. If the purpose of counsel for the defendant was to put before the jury the opinion of the witness as to the legality of his conviction, that opinion was without probative force. Looked at as an offer to prove as a fact that the conviction of the witness was illegal, it was an attempt to inject into the case an issue entirely foreign to that which the jury had been sworn to try. This the statute does not contemplate. It permits the fact of the conviction to be shown for what it is worth as affecting the credibility of the witness, without regard to its justice or legality. The offered testimony was further objectionable because its purpose was to nullify a judgment of the Essex Oyer and Terminer in violation of the universally recognized rule that a judicial record imports absolute verity, and is conclusive concerning the matters to which it relates. *24 Am. & Eng. Encycl. L. (2d ed.)* 193, and notes.

The second assignment of error, which challenges the legality of a ruling upon evidence, is directed at the exclusion of testimony showing that the defendant, at the time of his wife's funeral, looked upon her dead body, touched and kissed it. It would seem from the argument submitted to us by counsel that this testimony is thought to have been legally admissible because such acts of the defendant were evidence of the existence of love for his deceased wife during her life. Admitting this to be so, the defendant's act was significant only because by it he inferentially declared that his wife held his affection while she was living. If he had so stated in words, at the time of his wife's funeral, that statement would clearly have been inadmissible, by reason of the elementary rule which excludes self-serving declarations. A declaration to be inferred from conduct falls within the same rule. *People* v. *Rathbun,* 21 *Wend.* 509, 519; *Voorhees* v. *Hen-*

*drickson,* 5 *Dutcher* 101, 104. There was no error in the exclusion of this evidence.

The first assignment of error, which is directed at the charge to the jury, challenges the soundness of the following instruction: "There is a rule of criminal law that everybody is presumed to be innocent; the law does not presume anybody to be guilty. That goes through every case; it goes through this case. If you come to the conclusion, however, as a result of your deliberation, that there is guilt proved— any degree of criminality under this indictment—of course that presumption of innocence cannot stand after that. It does exist up to that time, and unless you do find there is guilt that presumption of innocence would entitle him to a verdict of acquittal." The contention of counsel for the defendant upon this assignment is that the presumption of innocence exists until the jury has arrived at a verdict; in other words, that it continues after the jury have determined the fact that the defendant is guilty, and until they have also determined the degree of his guilt; and the complaint is that the instruction does not conform to this principle. We think the language used by the court bears the construction put upon it by counsel; but we find no error in the instruction. In this state the defendant in an indictment for murder is presumed to be innocent until he is found by the jury to be guilty of a criminal homicide. When the jury have reached that conclusion, then, under the law as administered in this state, the presumption immediately arises that the crime of which he is guilty is murder in the second degree. *Brown* v. *State,* 33 *Vroom* 666. This latter presumption being absolutely antagonistic to that of innocence necessarily destroys it. There is no merit in this assignment.

The next assignment of error is directed at the following excerpt from the charge of the court upon the right of the defendant to the benefit of a reasonable doubt: "In order to warrant a conviction for any crime under this indictment, the state must prove the facts sufficient for that purpose by evidence beyond a reasonable doubt. A reasonable doubt would exist when the judgment of the jury, after a careful

review of all the evidence, finds itself unconvinced of the guilt of the prisoner. If such a doubt exists you are bound to give the benefit of it to the prisoner, but you are not bound to give him the benefit of anything but such a reasonable doubt." The criticism upon this part of the charge is that the definition of reasonable doubt is erroneous, and the contention is that by the instruction the jury were not bound to give the defendant the benefit of anything but a reasonable doubt as thus defined. The trial court, in this instruction, adopted the language of Justice Magie in his charge to the jury in the case of *Wilson* v. *State*, 31 *Vroom* 171 (see page 172, line 1 *et seq.* of the report). This language has been frequently used since the publication of that report by judges at the Oyer as a correct exposition of the law, and we are not now impressed by the criticism made upon it by counsel. The position which he takes is that it is inaccurate to say that a reasonable doubt can exist only when the mind remains unconvinced. This we cannot concede. To us it seems that to be convinced of the existence of a thing, and to be satisfied beyond a reasonable doubt of its existence, are one and the same condition of mind. And this, as we understand it, is the idea underlying the statement of Justice Parker in *State* v. *Mangano*, 48 *Id.* 544, 550, that "The force of the word 'convince' is strikingly shown in the explanation so often given to jurors on the subject of finding the defendant guilty beyond a reasonable doubt, that they must have an abiding 'conviction' of the defendant's guilt." We find no error in the instruction complained of.

The next assignment of error is directed at the following instruction contained in the charge to the jury: "The presumption in all cases of criminal homicide is that it is murder in the second degree. The burden is on the defendant to show facts in mitigation which might reduce it down to manslaughter, and there is nothing in the case of the kind. The reason for it is perfectly evident, because the defendant denies that he was guilty of setting fire to her. They have not offered any evidence to reduce or mitigate such action, because they deny that it was done, so you do not have to

consider that part of it at all. The manslaughter feature of the case is not here concerned in the least. If you find that this man set the fire himself it would be murder of the one degree or the other." It is first insisted that the instruction is erroneous because its effect is to prevent the jury from rendering a verdict of manslaughter against the defendant, in case they found him guilty of a criminal homicide. This contention rests upon a too narrow view of the charge. The case made by the state against the defendant was purely circumstantial. The primary claim made by it to the jury was that on the facts adduced it was reasonably certain that the defendant either himself set fire to his wife's clothing, or caused fire to be set thereto, for the purpose of producing her death, in order that he might collect certain insurance which he had taken out upon her life. It was further contended by the state that if the jury should not be satisfied beyond a reasonable doubt that this was true, the defendant should not on this account be acquitted. That if the jury should find that the clothing of the defendant's wife caught fire, not by his act or connivance, but by accident, the evidence demonstrated that he was guilty of gross negligence in failing to extinguish the flames which were consuming her body. The trial judge, in his charge to the jury, dealt with each of these contentions. The portion of the charge, which the present assignment attacks, dealt with the first of them, and was predicated upon the assumption that the jury should conclude it to have been established by the proofs beyond a reasonable doubt. He afterward took up the secondary contention of the state and charged the jury that if they found the death of the defendant's wife was not due to any act or connivance on his part, but nevertheless resulted from his gross negligence in not using reasonable effort to extinguish the flames, he was guilty of manslaughter. The instruction in its entirety was unobjectionable. If the jury were satisfied beyond a reasonable doubt from the proofs in the case that the defendant either himself set fire to his wife's clothing, or caused them to catch fire, for the purpose of producing her death, in order that he might collect insurance

upon her life, a verdict of manslaughter against him would have been as much without justification as a verdict of acquittal. Death so produced, and from such a motive, is murder, not manslaughter; and it was the duty of the trial judge to so instruct the jury. *State* v. *Bectsa,* 42 *Vroom* 322; *State* v. *Biango,* 46 *Id.* 284.

It is further contended that this instruction was erroneous because there was no evidence in the case to justify a finding by the jury that the defendant set fire to his wife's clothing with intent to produce her death. It is enough to say, for the purpose of disposing of this contention, that we find in the case proof of circumstances which support this conclusion, and there was consequently no legal error in submitting this question to the jury for its consideration.

The next specification argued on behalf of the defendant is that the trial court erred in not directing the jury to render a verdict of acquittal on the charge of murder. This specification is almost too frivolous to be commented upon. In the first place, no request for such an instruction was submitted on the part of the defendant to the trial court. Error can be assigned only upon instructions actually given by the court to the jury or instructions refused to be given upon request. And this is so whether the case comes up for review either on strict bill of exceptions or on a general review provided by the one hundred and thirty-sixth section of our Criminal Procedure act. In the second place, on the case made by the state the question whether the proofs showed the guilt of the defendant of the crime of murder beyond a reasonable doubt, was one to be determined by the jury, not by the court.

The next assignment of error discussed by counsel challenges the correctness of the charge of the court with respect to dying declarations. On this subject the court said (referring to a statement testified to by witnesses called by the defendant as having been made by his wife, a few hours before her death, and exonerating him from responsibility for it): "I admitted that statement as a matter for me to pass upon in the first instance. It is now for the jury to say whether

or not they believe the statements made by these witnesses. Under the law of our state the question as to whether a statement may be admitted as a dying declaration is a matter for the court to pass on in the first instance. When it is admitted it comes in just as all evidence does, as subject to the jury's consideration as to the credibility of the witnesses. Whether the deceased spoke the truth when she declared— assuming that she did declare—that the defendant had nothing to do with it, that it was her fault, and that he helped her, is for the jury's determination. Whether the witnesses who testified that she made such declaration testified truthfully, is also for the jury to determine. In other words, gentlemen, when I ruled on that matter, to admit that testimony, I did not undertake to decide, and could not decide, whether these witnesses were telling the truth in what they said. It may be that they were and it may be that they were not. That is for you to say." In the case of *State* v. *Monich,* 45 *Vroom* 522, the Court of Errors and Appeals, speaking through Justice Pitney (at *p.* 529), thus deals with the subject under consideration: "The determination of the question whether a declaration that is offered as a dying declaration was in truth made under a sense of impending death, like the determination of the cognate question whether a defendant's confession was made voluntarily, is for the trial court and not for the jury. The question relates to the admissibility of evidence, and, like all similar questions, is not reviewable by the jury. Whether the deceased spoke the truth when she declared that, &c., &c., was for the jury's determination. Whether the witnesses who testified that she made such a declaration testified truthfully, was likewise for the jury to decide." It is contended by counsel for the defendant that under the instruction now complained of the court erroneously left it to the jury to say whether the declaration, if made, was made under the sense of impending death. We do not think this a fair interpretation of the charge. As we read it, the only questions left to the jury for their determination were, whether the deceased in fact made the statement which was attributed to

her by the witnesses; and, if she did make it, then whether she spoke the truth in saying what she did. The charge, thus read, is in strict accordance with the rule laid down in *State* v. *Monich, supra.*

Other errors have been assigned or specified on the record. They have not, however, been considered by counsel for the defendant of sufficient importance to justify discussion before us, and our examination of them satisfies us of the soundness of his conclusion.

The judgment under review will be affirmed.