THE STATE OF NEW JERSEY, DEFENDANT IN ERROR. v. WILLIAM C. PARKER. PLAINTIFF IN ERROR.

Submitted December 7, 1911—Decided June 3, 1912.

1. A judge of election upon an indictment charging him with illegally depositing a ballot in the box. before the election board had voted to receive, it. cannot question the *status* of one serving as a member of such board. without objection, and with apparent authority, and who voted against the reception of the ballot.

2. The court, upon an indictment against a judge of election, charging him with illegally depositing a ballot in the box before the

election board had voted to receive it, refused to allow the defendant to show a custom of the board to permit a voter to swear in his vote where the board was evenly divided—*Held,* proper.

3. Where counsel in addressing the jury transcend the proper and fair comment upon the evidence, the complaining party should promptly object, otherwise it will not furnish ground for the reversal of the judgment.

On error to Camden County Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and VOORHEES.

For the plaintiff in error, *Harry C. Kramer, Albert S. Woodruff, Floyd H. Bradley* and *Robert H. McCarter.*

For the defendant in error, *Henry S. Scovel,* prosecutor of the pleas, and *Charles A. Wolverton,* assistant prosecutor.

The opinion of the court was delivered by

VOORHEES, J. The defendant, William C. Parker, was convicted under an indictment containing nine counts. The first four counts charge the same offence that after William Jordan had been challenged, the defendant placed his ballot in the box before the board had by vote decided to receive it, and the last five counts that the defendant unlawfully aided and assisted Jordan to cast his ballot, knowing that he, Jordan, was not qualified to vote. The jury returned a verdict of guilty.

The offence took place at the election held in the sixth district of the fifth ward of the city of Camden. There was evidence to show that Jordan was registered from 323 Cherry street. In the afternoon of election day a person representing himself to be Jordan offered his vote. One of the election officers asked him his residence and he replied 232 Cherry street. He was then told that he was in the wrong precinct, and would have to go to another precinct. Someone in the crowd standing about then called out, "You mean

323 Cherry street," and Jordan accordingly changed the number of his residence, which brought it in the precinct where he was attempting to vote. He was then questioned as to the length of residence at that place, and said "from six to eight months." It was stated to him that there were six other voters registered from that house, and was asked if he could give the names of any of them, and he said "No." The election officer then said he was not willing to accept his ballot until the board ordered it. This officer and his colleague voted not to accept the ballot and the other two members of the board voted to accept it.

The defendant, who was judge of the election, thereupon deposited the ballot, notwithstanding the vote was a tie and protest by the other two members of the board was made. There was evidence also that a committee of the Camden Bar Association had before that visited the election booth, and upon learning that ballots had been deposited when the board stood two to two, told the board that it had no right to do so. The defendant replied, "That with a protest he wouldn't put no ballot in unless some one had vouched for him." He then said, "Well, you can give advice but we know what we have got to do." And afterwards stated, "To hell with the judge. I will take my medicine."

The defence was that afterwards the other members of the board said, "All right."

It is alleged that Albert Neutze, one of the members of the board, was not qualified to vote, because not a member of the board, but there was evidence that he had been, on November 5th, 1910, appointed as a member by the county board of elections until August 31st, 1911. At all events, he was a *de facto* officer and was so serving, and signed the returns. No objection to his acting all that day had been made, and it does not lie in the mouth of the defendant to deny his *status*. The court ruled that he was a *de facto* officer, and that ruling was correct.

It is said that the court failed to point out to the jury the demarcation between the two issues presented in the trial,

that is, that the court gave no instructions in regard to one series of charges, viz., the aiding and abetting of the depositing of a fraudulent vote, but confined his charge altogether to the defendant's violation of the law as judge of election, in depositing the ballot before the election board had authorized it. There was no request made to him to do so. Error can be assigned only upon instructions actually given by the court to the jury or upon refusals to give instructions upon request, and this is so whether the case is reviewed by a strict bill of exceptions, or under the one hundred and thirty-sixth section of the Criminal Procedure act. *State* v. *Leo*, 51 *Vroom* 21.

It is next asserted that the court erred in refusing to allow the defendant to show a custom of the election board to permit a voter to swear in his vote where the board was evenly divided. A witness for the state was asked on cross-examination whether during the two years he had served on the board, he had reported to anybody that practice that had grown up in this manner. This was not cross-examination, it was improper testimony, and a custom contrary to the law, with no justification for its violation.

It is said that this was permissible to go to the jury to negative any willful intent on the part of the defendant. But the defendant had, on that day, been warned by the bar association not to do this thing; and had been told that it was a violation of the law, and he replied substantially that although he knew the law and its force, he yet would do it and take his medicine. He did not then pretend to rely upon custom, and if he had, having been instructed that the custom was violative of law, he cannot now be permitted to set up the illegal practice. There was no error.

The next point made is that the court permitted the state's witness to testify to what occurred after the offence charged had been committed to the effect that another person came in and voted as William Jordan, after that name had already been voted upon, and that the entire board accepted this vote. The evidence was that no objection had

been made to the reception of this vote by any member of the board. It seems to be relevant evidence to charge the defendant; if not, it does not appear that there was manifest wrong or injury done to the defendant by its admission.

The next point is that the court admitted the registry book, notwithstanding the fact that there were extraneous memoranda written opposite the names of several of the voters. These memoranda the judge covered up by pasting slips over those portions of the books where they had been written in, and ruled them out.

No allegation was made that the book had been otherwise tampered with. We perceive no error in the judicial action.

The facts concerning the taking of the book from the county clerk appeared in evidence and it became the province of the jury to determine whether the book had been tampered with in other particulars. There was no harmful error.

The motion made to direct a verdict for acquittal was based upon the fact that the two election officers said "All right, put the vote in," and that the board contained but three members, instead of four. This, however, fails to take into consideration the other counts in the indictment, and also that the evidence was in dispute that all four members of the board assented, which with our view of the situation, as above stated, that there were four members in the board, are sufficient reasons why the court should not have directed a verdict.

The next point made is as to the prosecutor's argument to the jury. There were no exceptions taken to this at the time, nor was there any objection made to it. The objections taken were made after the jury had retired and after it was impossible to have checked the prosecutor.

Under these circumstances, it cannot be said that there was denial of any matter resting in the discretion of the court. The court was not moved to correct any statements. *State* v. *Lockman, ante p.* 168.

The charge that the jury might take into consideration the evidence introduced by the defendant of his good char-

acter, in determining whether he knowingly and willfully did the act was "if that evidence convinces you that he would not knowingly and willfully do this act, you must give him the benefit of it." This is perhaps inaccurate, but in view of the accuracy of the instruction as to reasonable doubt, and as the case comes here under the one hundred and thirty-sixth section of the Criminal Procedure act only, we do not think it did the defendant manifest wrong and injury.

What took place in the polling booth, and the statements made by the members of the bar association, were properly admitted as bearing upon the willfulness of the defendant's act.

The judgment should be affirmed. The form of the judgment is the same as that reviewed by this court in *State* v. *Carrigan,* 53 *Vroom* 225, and under the authority of that case, the cause must be remanded to the trial court for the imposition of a proper sentence.