## UNITED STATES v. ALLEN et al.

(District Court, S. D. Florida.    December 2, 1926.)

1. **Intoxicating liquors** ⟊=⟩249—Search of automobile on public highway is legal, when facts within knowledge of seizing officers warrant belief of transportation of liquor.

Search and seizure of automobile on public highway is legal, when facts and circumstances within knowledge of seizing officers, and of which they have reasonable trustworthy information, are such in themselves as to warrant a man of reasonable caution in belief that intoxicating liquor was being transported therein.

2. **Searches and seizures** ⟊=⟩7—Search of automobile on highway, based on information that certain automobile was going to haul whisky over highway, held unconstitutional (Const. Amend. 4).

Search of automobile on public highway by prohibition agents, based on information that certain Studebaker automobile, with blue headlights and a driving light in center, was going to haul liquor over certain road, together with fact that rear of car was dusty, *held* in violation of defendant's rights, under Const. Amend. 4.

Prosecution by the United States against Tom Allen and another. On objection by defendant named to introduction of evidence. Objection sustained.

Wm. M. Gober, U. S. Dist. Atty., of Tampa, Fla.

W. K. Zewadski, Jr., of Tampa, Fla., for defendant.

JONES, District Judge. An information was filed in this court by the United States

district attorney charging one Tom Allen and another with the unlawful transportation of intoxicating liquor in violation of the National Prohibition Law. The cause came on for trial against Tom Allen before a jury, duly impaneled in open court. The testimony showed that prohibition officers, during the night of August 14, 1926, without a search warrant, stopped an automobile on a public highway in Hillsborough county, Fla., searched it, and found therein the defendant Allen and certain intoxicating liquors. Allen was placed under arrest by the prohibition officers and the liquors seized.

The government at the trial, upon the testimony of one of the prohibition agents who made the search and seizure, offered in evidence against this defendant the liquor so seized, to the introduction of which the attorney for the defendant objected, on the ground that the search and seizure was unlawful and in violation of the constitutional rights of the defendant.

The testimony of the prohibition agent, relied upon by the prosecution, was to the effect that he had "information that some automobiles were going to haul whisky over this road that night." The witness, in reply to the question, "What kind [of automobile] were you looking for?" answered, "One was a master six Studebaker sedan, and Ford coupé, and Dodge truck, and Ford coupé, and Studebaker roadster."

In addition to the above, the witness testified that he and another prohibition agent watched this road on the night in question, at a point at or near the bridge across the Alafia river; that his information showed that the Studebaker automobile had blue headlights, with driving lights in the center, and the rear glass to the right-hand door was broken, and mended with tape. He testified that about midnight a Studebaker automobile, with blue bulbs in the headlights, and driving lights in the center, crossed the bridge, and it was followed by a Ford coupé; that the car was going about 20 miles an hour; that he did not see who was in the car and he did not see the contents of the car; that he and his assistant proceeded to follow the cars; and in answer to a question whether or not he saw anything, when following these cars, that would indicate that the Studebaker car was used for unlawful transportation of intoxicating liquors, said: "Well, it appeared to be loaded and it was rather dirty; it appeared to be on a long drive—had mud on the back part of the spare tire cover and fenders."

The witness and his assistant then drove the car in which they were riding past the

16 F.(2d)—21

Studebaker car, and, driving their car in front of said Studebaker car, forced the driver thereof to stop. They immediately went up to the Studebaker car, found the defendant Allen therein, and found also the intoxicating liquors offered in evidence. The witness for the government, on cross-examination and in response to questions by the court, stated that he did not know the defendant Allen was in the car until after he had forced it to stop, and that he did not know that it contained intoxicating liquors until after that time.

[1] The government, in urging the admission in evidence of the liquors in question, relied entirely upon the holding of the United States Supreme Court in the case of Carroll et al. v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790. The rule of law controlling the question of search and seizure of automobiles on the public highways, without the aid of search warrants, is clearly and distinctly laid down in the Carroll Case. This rule is to the effect that such searches and seizures are legal when the facts and circumstances within the knowledge of the seizing officers, and of which they have reasonable trustworthy information, are such in themselves to "warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the automobile * * *" which is the subject of such seizure.

The facts in the Carroll Case, which led the Supreme Court of the United States to the conclusion that this rule had been met, and the search and seizure in that case was justifiable, showed that the prohibition officers, who made the seizure, some time prior to that time had a conference with the defendants Carroll and Kiro and arranged to purchase from them three cases of whisky. The defendants advised that they would go and get the liquor; they went and returned, or one of them did, and said he could not get the liquor that night. The defendants came to this conference in an Oldsmobile roadster, which was seen by the prohibition officers, and the number of the license tag was taken by them.

About two months later these same prohibition agents passed this same car, bearing the same license number, on a public highway going westward, presumably from Detroit. The same men who agreed to sell the liquor at the previous meeting in Grand Rapids were in the automobile, and the court held that these officers, seeing and knowing the occupants of the car, knowing the car by the license tag which it bore to be the same car which said occupants used at the time of the agreement to furnish liquor in violation of

the law, were justified in believing the car was being used to unlawfully transport intoxicating liquor, and were justified in searching and seizing same without a search warrant.

[2] Do the facts in the instant case measure up to the rule laid down in the Carroll Case? I do not think so. They show that the seizing officers had no personal knowledge whatever of the alleged unlawful transportation of liquor in the car seized; that they acted upon information (the source of which, or the reliability of which, was not disclosed) that a Studebaker sedan car, with blue headlights and a driving light in the center, would be, or might be, used on this road at the time in question for the unlawful transportation of liquor. It is admitted that other Studebaker cars—that many Studebaker cars—are equipped in the same way as the car in question, and the witness for the government, when asked what, as he followed the car in question, indicated to him that it was being used for the unlawful transportation of liquor, said: "It appeared to be loaded, and was rather dirty, and had mud on the back part of the spare tire and fender."

In my opinion, the facts upon which these prohibition agents based their right to search and seize this automobile without a search warrant would justify them in stopping and searching any and every Studebaker sedan automobile that might happen to have blue bulbs in the headlights, a driving light in the center, and with dust and dirt on the back of it. Mr. Chief Justice Taft, while sustaining the seizure in the Carroll Case, in referring to the circumstances under which such seizures may be made, said:

"It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travelers may be so stopped in crossing an international boundary. * * * But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search, unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."

To my mind the question of the rights of agents of the federal government to make searches and seizures of automobiles on the public highways is a most important one, involving as it does the rights and liberties of the people of this country guaranteed to them by the Constitution of the United States. It is unfortunate that the average prohibition officer or agent appears to be under the impression that there is but one provision in the Constitution of the United States, and that the Eighteenth Amendment. There are, however, other provisions of the Constitution that are entitled at least to the same consideration, and are just as binding upon investigating officers and the courts of this country, as the Eighteenth Amendment. The Fourth Amendment to the Constitution guarantees the people of this country against unreasonable searches and seizures, and it is incumbent upon those empowered to enforce the Eighteenth Amendment to be careful at the same time not to violate the rights guaranteed under the Fourth Amendment.

In my opinion, the facts in this case are not such as would "warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the automobile which they stopped and searched"; that the search and seizure, measured by this rule laid down in Carroll v. United States, supra, was unreasonable and in violation of the Fourth Amendment to the Constitution.

The objection of the defendant to the introduction in evidence of the intoxicating liquor so seized will be sustained.