**UNITED STATES v. JANKOWSKI et al.**

Circuit Court of Appeals, Second Circuit. October 29, 1928.

No. 91.

Manton, Circuit Judge, dissenting.

Michael J. Maher, of Buffalo, N. Y. (John J. Carlo, of Buffalo, N. Y., of counsel), for plaintiffs in error.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Harold E. Orr, of Buffalo, N. Y., of counsel), for the United States.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). ▮ If the story of State Trooper Gibbons be taken as true, and it would seem to be more likely to be so than the interested account of the defendant Binkowski, we must assume that the troopers were patrolling the roads to secure the observance of state law and to detect its violation. A part of their duty was to see that persons driving motor vehicles complied with section 286 of the New York Highway Law (Consol. Laws, c. 25), which requires the display of proper headlights on all automobiles. Gibbons testified that the car which Jankowski drove had—

"one light on and the other flickering; * * * that they stopped this car to notify the driver to fix his lights; * * * that, after he stopped the defendant's car, he asked him for his license card and at that time saw a blanket across the knees of the defendants that he knew was the property of the state of New York; * * * that thereafter the two defendants got out of the car and * * * as they got out he noticed underneath the blanket was a package on the floor; * * * that he asked the defendant Binkowski what it was and that both defendants said 'it was whisky.' * * * He then asked the defendants if they had any more than what was in the front and Jankowski then opened the back end of the coupé and there were 16 cases altogether of 'Golden Wedding' whisky and that he then placed

them under arrest and took them to James-town."

This version of what occurred shows no illegal search, nor, indeed, any search at all. While engaged in ordinary police work for the state, the troopers saw the package which the defendants said contained whisky. Thereafter the defendants, knowing that they were caught, confessed that they had other whisky aboard the car, and opened the rear of the car and disclosed the contents.

The claim that the search was illegal can only be based on the opening of the door of the car by the trooper. But when a policeman, without any protest, opens the door of an automobile to talk to the owner, it certainly goes beyond all reason to say that he is engaged in an unlawful search. It may often be the most convenient way either to look at a registry card or to talk to the driver about the condition of his headlights.

Nor is it necessary, because the lights were not ultimately found to be defective, to assume that the motive for stopping the car was to make an unlawful search for contraband liquor. They may have temporarily been dim because of some irregularity in the electric current, or the officers may have been mistaken. The avowed purpose for stopping the car and opening the door was to enforce state regulations, and the discovery of the whisky was incidental.

In such circumstances, any officer who saw the defendants in the act of committing a crime would have the power to make an arrest.

The plaintiff in error relies on the decision in Gambino v. United States, 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381. It was there held that, when state officers were making a search and seizure without probable cause and solely for the purpose of aiding in the enforcement of the federal law, the evidence could not be used in the federal courts, because the sole purpose of the search was to aid in the prosecution of a federal offense. Here, according to the testimony of Gibbons, the purpose of stopping the car was to enforce the observance of the state laws, and the information gained thereby was incidental and obtained without any search.

The only remaining consideration is whether the story of Gibbons, on the faith of which the trial judge admitted the evidence, was credible, and whether, even if it was prima facie credible, the jury, in view of the conflict of testimony, should not have been allowed to pass on whether the facts constituted an illegal search.

■ It cannot be doubted that the testimony of Gibbons was credible. It was only met by the story of one of the defendants under indictment for the offense charged. Gibbons is not shown to have had any interest in misrepresenting the facts, whereas the interest of the defendants was patent. Consequently there was sufficient ground for the admission of the testimony by the trial judge.

■ If, as we find, the testimony was properly admitted by the court, it would be contrary to all proper rules of evidence to allow the jury in effect to pass on its admissibility and to determine whether any legal search was made. The question as to the lawfulness of the search relates to admissibility of evidence, and was for the court only. While we are referred to no decision relating especially to the rule as to admissibility of evidence in search and seizure cases, the general rule is as we have indicated. Gila Valley G. & N. R. Co. v. Hall, 232 U. S. 94, 34 S. Ct. 229, 58 L. Ed. 521; Commonwealth v. Culver, 126 Mass. 464; State v. Leo, 80 N. J. Law, 21, 77 A. 523.

We find no error in the record, and the judgment of conviction is accordingly affirmed.

MANTON, Circuit Judge (dissenting). Gambino v. United States, 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381, establishes that a New York state trooper, in which state there is no enabling act for the enforcement of the Prohibition Law, may not search, without a warrant, an automobile carrying intoxicating liquors while the defendant is occupying it, and thereafter seize the liquors and turn them over to the federal authorities for prosecution under the Prohibition Act (27 USCA), for the reason that it is necessary to establish probable cause before an arrest, search, and seizure may be made on behalf of the United States. The admission in evidence of the liquors so obtained was there held to be a violation of the Fourth and Fifth Amendments. In Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, the court pointed out the need, for a lawful seizure, of establishing probable cause, and held that section 26 of title 2 of the National Prohibition Act (27 USCA § 40), permitting seizure of the vehicle when officers discovered a person in the act of transporting in violation of the law, does not limit the officer "to what he sees, hears, or smells as the automobile rolls by," but when he identifies the car, and has convincing information that he has previously received as to the use being made of it, he may use such information

as establishing the probable cause. It was a federal officer who made the seizure. In the case at bar there was no previous knowledge shown upon which to predicate probable cause. The reason given for stopping the car was said to be a possible violation of the State Motor Vehicle Law (Laws 1904, c. 538), in that lamps were not lighted as required by that act. But, when the car was stopped, no arrest was made, either for violation of the Motor Vehicle Law or the possession of a blanket which formerly belonged to state troopers. No accusation of crime was made as to either, but at once the state troopers made search of the automobile and seized the liquor. This amounted to an unlawful seizure within the Gambino Case. See, also, Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654; United States v. Allen (D. C.) 16 F.(2d) 320; Emite v. United States (C. C. A.) 15 F.(2d) 623; Brown v. United States (C. C. A.) 4 F.(2d) 246; Snyder v. United States (C. C. A.) 285 F. 1. The only arrest made was for violation of the Prohibition Law, and the seizure of the liquor was not an incident of an arrest on a charge of violating the state law.

I dissent.