## (June 18, 1968)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ANTHONY MCKENDALL, Appellant.— STALEY, JR., J. Appeal from a judgment of the County Court of Ulster County, rendered April 26, 1965, upon a verdict convicting defendant of the crimes of robbery in the first degree and assault in the second degree. The appellant was indicted jointly with William Moran, Joseph Luis and Joseph Jargow and charged with having committed the crimes

of conspiracy, robbery in the first degree, assault in the second degree and grand larceny in the first degree. A joint trial was held and resulted in a jury verdict which found the appellant and Moran guilty of robbery in the first degree and assault in the second degree. During the trial the conspiracy charge was dismissed and the remaining charges were dismissed against Luis and Jargow on a motion by the People when it appeared to the District Attorney that the only witness to the conspiracy was unreliable. The appellant seeks a reversal on the ground that he was deprived of a fair trial by the admission into evidence of an oral confession of the codefendant Moran which implicated the appellant in the commission of the crimes; by the prosecutor improperly using his name with reference to this confession on summation; and by the improper use of his name by a witness for the People while testifying relative to Moran's confession and the contents thereof, although the court had ordered that the appellant's name be redacted from the confession. The appellant also contends that it was error to deny the motion to suppress the evidence of the clothing taken from the truck by the police. At about 3:00 A.M. on October 8, 1964, two masked men, armed with a shotgun and a pistol, entered the office of the Ellenville Taxi Company and took $1,200 from several men present who were participating in card games. As they were leaving they ordered the men to remove their jackets and pants which the pair took with them as they fled. The victims called the police who arrived to see a red and white G. M. C. pick-up truck near the scene which sped away when they attempted to stop it. The engine of the police car malfunctioned, resulting in the truck successfully eluding the police and disappearing on a logging road in a wooded area. At about 4:00 A.M., the appellant awoke his brother-in-law, one Conklin, and asked him to drive him home. Conklin also drove a red and white pick-up truck and as they passed the area where the G. M. C. truck had disappeared, the codefendant Moran appeared and was picked up. On the way the police stopped the truck, whereupon they arrested the appellant on another charge and allowed the others to proceed as the truck was not the getaway truck. The appellant was taken to the police station where he was identified by his height, build and clothing by several of the victims of the robbery who were apparently there to make their reports on the robbery. Later that morning the codefendant Moran was arrested after being identified by a gas station attendant as having been with the appellant at 2:00 A.M. On the way to the police station the police went up the logging road and found a red and white pick-up truck on the logging road. On approaching the truck they saw many articles of men's clothing lying uncovered in the back of the truck. After photographing the scene they removed the clothing and indexed each article and subsequently used them as evidence at the trial. It was also established that the truck belonged to the appellant. Upon being questioned at the scene Moran orally admitted his guilt and implicated the appellant. When he was returned to the police station, he repudiated his confession and refused to give a written statement. Prior to the trial a *Huntley* hearing was held which resulted in a ruling that Moran's oral confession was admissible in evidence. A motion to suppress the evidence of the clothing taken from the truck was denied after a hearing. The appellant then moved for a separate trial. This motion was denied but the court ordered Moran's confession to be redacted to the extent of eliminating any reference to the appellant's name by substituting the term "another person" in place of his name. In the prosecutor's opening statement he alluded to the fact that the appellant and Moran were brought to the police station and identified by their clothing and that, in addition, he was going to introduce an oral confession by Moran wherein he admitted that he and another individual committed the robbery. Thus, prior to any testimony, the seed had been planted in the minds of the jury that the appellant was this other

individual. This seed germinated and was brought to full bloom when Investigator Teelon of the State Police inadvertently named the appellant twice in testifying to the contents of the oral confession and the prosecutor, in discussing Moran's confession on summation, likewise inadvertently named the appellant saying: "Moran said Mr. McKendall took the — I'm sorry — Moran said the other person took —." It was established on the trial that the truck used in the commission of the crimes was owned by the appellant and the contents of the confession indicated that the truck was owned by the other person. It was also established on the trial that the appellant was arrested while being driven home by his brother-in-law and that they had picked up Moran on the way. It may be inferred that it was clearly established in the minds of the jury that the "other person" referred to in the confession was, in fact, the appellant. The testimony concerning the events and the confession were so linked together that they were inseparable. All of this vitiated the restriction under which the confession was permitted to be received in evidence, namely, that it was not to be received as evidence against the appellant. We cannot minimize the damaging effect of these improper references. The safeguards which the court placed on the use of Moran's confession having been completely dissipated, we can only conclude that the conduct of the trial was such as to deny the appellant the fundamentals of a fair trial. The inadvertent reference to the appellant and the use of portions of the confession implicating him during the trial and on summation were so prejudicial as to require a reversal and a new trial. (*People* v. *Adams*, 21 N Y 2d 397; *People* v. *Lombard*, 4 A D 2d 666; *People* v. *Driscoll*, 20 A D 2d 880.) In the case of *Bruton* v. *United States* (391 U. S. 123), the question under consideration was whether the conviction of a defendant at a joint trial should be set aside although the jury was instructed that a codefendant's confession inculpating the defendant had to be disregarded in determining his guilt or innocence. The confession of petitioner's codefendant Evans, which implicated petitioner in the commission of the crime, was admitted in evidence against Evans with instructions by the court to the jury that, as to petitioner, it was inadmissible and should be disregarded by them. The court reversed petitioner's conviction, holding that the admission in evidence of Evans' confession, even with the court's instruction to disregard it as against petitioner, was prejudicial to the petitioner, and stated: " We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. \* \* \* Here the introduction of Evans' confession posed a substantial threat to petitioner's right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all. See *Anderson* v. *United States*, 318 U. S. 350, 356–357; cf. *Burgette* v. *Texas*, 389 U. S. 109, 115." Although there may be in the record sufficient proof to support the verdict as to the appellant, we hold that the conduct of the trial, with respect to the use of Moran's confession against appellant, deprived him of a fair trial (*People* v. *Mleczko*, 298 N. Y. 153; *People* v. *Savvides*, 1 N Y 2d 554; *People* v. *Adams*, *supra*.) Appellant's further contention that taking the articles of clothing from the rear of the truck constituted an unlawful search and seizure, and that it was error not to suppress this evidence, is without merit. The Constitution forbids only unreasonable searches. Nothing in the Constitution inhibits the seizure of

property readily recognizable as contraband or fruits or instrumentalities of a crime which are in open view and readily visible to the eye and located in a place lawfully entered by the police without any element of trespass or fraudulent invasion of the rights of citizens. In such cases there is no search but only a seizure. (*People* v. *Manzi,* 38 Misc 2d 114; *United States* v. *Jankowski,* 28 F. 2d 800; *United States* v. *Charles,* 8 F. 2d 302.) Judgment reversed, on the law and the facts, and a new trial ordered. Gibson, P. J., Herlihy, Aulisi, Staley, Jr., and Gabrielli, JJ., concur in memorandum by Staley, Jr., J.