# GILA VALLEY, GLOBE & NORTHERN RAILWAY COMPANY *v.* HALL.

## ERROR TO THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 68.  Submitted November 13, 1913.—Decided January 5, 1914.

On an appeal from the territorial court this court cannot consider errors, not fundamental in character, which might have been, but were not, brought under review in the appellate court below.

Where the local practice of the Territory requires specific assignments of error and treats all others as waived, and the transcript filed here does not contain the assignment of errors below, this court confines itself to errors mentioned in the opinion of the appellate court below.

Whether an accident did or did not occur in a manner theoretically impossible according to expert opinions of defendant's witnesses, is properly submitted to the jury if there is evidence to sustain the plaintiff's contention, and if the court cannot hold as a conclusion of law that the accident could not possibly have occurred in that manner.

One employed for only a few days, and whose duties did not include inspection of the equipment or care respecting its condition, *held*, not chargeable as matter of law with assumption of risk on the ground of presumed knowledge of a defect in the condition of the equipment, there being no direct evidence that he knew of it.

Where the fact is in dispute as to whether a defect in a machine is such as to render its use dangerous, it cannot be properly held as matter of law that the risk is obvious even to one who knew of the defect.

An employé assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as they are not attributable to the employer's negligence; but the employé has a right to assume that his employer has exercised proper care with respect to providing safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employé becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it.

In order to charge an employé with the assumption of a risk attributable to a defect due to the employer's negligence it must appear not only that he knew (or is presumed to have known) of the defect, but that

he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it.

Questions of admissibility of evidence are for the determination of the trial court, whether its admission depends upon matter of law or of fact, and the finding upon such a question is not subject to reversal on appeal or error if fairly supported by the evidence; and so *held* as to the exclusion of evidence offered by defendant to prove remarks made by a third person in presence of the plaintiff before the injury as to defects in the appliance used by him.

The territorial appellate court having held that while in case of an excessive verdict for unliquidated damages tainted with passion or prejudice a new trial should be granted and the verdict not simply reduced, the trial judge is in the better position to judge if the verdict is merely excessive and should be allowed to stand if voluntarily reduced by the plaintiff to a reasonable amount, this court sees no reason for disturbing that decision, there being no constitutional obstacle to the practice.

13 Arizona, 270, affirmed.

THE facts, which involve the validity of a verdict and judgment for damages for personal injuries obtained in the territorial courts, are stated in the opinion.

*Mr. Eugene S. Ives* for plaintiffs in error:

In order to justify the court in sending case to the jury the evidence must clearly tend to sustain a verdict for plaintiff. *Root* v. *Fay*, 5 Arizona, 19; *Randall* v. *R. R. Co.*, 109 U. S. 478; *Richardson* v. *Powers*, 11 Arizona, 31.

Where facts proved are equally consistent with the absence of negligence as of its existence, the question should not be submitted to the jury. *McFadden* v. *Campbell*, 34 N. Y. Supp. 136; *Baulec* v. *Railroad Co.*, 59 N. Y. 356.

If the injury may have resulted from one of two causes for only one of which the defendant is liable, plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result. *Warner* v. *R. R. Co.*, 178 Missouri, at p. 134; *Pierce* v. *Kile*, 80 Fed. Rep. 865; *Ellison* v. *Truesdale*, 49 Minnesota, 240.

A verdict based on conjecture will not be permitted. *Wheelan* v. *Railway Co.*, 85 Iowa, 167; *B. & O. R. R.* v. *State*, 71 Maryland, 599; *Cumberland & P. R. Co.* v. *State*, 73 Maryland, 74.

An expert witness in testifying as to the condition of the velocipede which caused the accident must state specific facts and not his conclusion that its condition was very bad. *McMahon* v. *Dubuque*, 107 Iowa, 62.

In cross-examination of an expert witness it is proper to ask the witness if other causes may not have produced the result. 5 Ency. of Evi. 632; *Schlenker* v. *State*, 9 Nebraska, 241.

An answer to a question to which the opposing counsel objected, cannot be stricken out upon motion of the party who propounded it. *Hogan* v. *Shuart*, 11 Montana, 498.

Evidence offered by the defendant as to a conversation which the plaintiff might have heard is admissible, and it is for the jury to determine whether the plaintiff actually overheard such conversation. *Bush* v. *McCarty*, 127 Georgia, 308; *Berry* v. *House*, 1 Tex. Civ. App. 562; *Wright* v. *Stewart*, 130 Fed. Rep. 905; 1 Wigmore on Ev., § 261.

The court may call and examine a witness who has not been called by the parties. 8 Ency. Pl. & Pr. 72.

The fact that evidence is cumulative is no reason for excluding it. 3 Ency. Ev. 929 and note 39; *Barhyte* v. *Summers*, 68 Michigan, 34; *S. Danville* v. *Jacobs*, 42 Ill. App. 533.

Where the servant had the opportunity to know or in the exercise of reasonable or ordinary care should have known the risks to which he is exposed in the course of his employment, he will be held to have assumed them. 26 Cyc. 1196, n. 99; 26 Cyc. 1204, n. 17; *Thomas* v. *Mo. Pac. Ry. Co.*, 109 Missouri, 187; Thompson on Negligence, 1008; *H. & T. C. R. Co.* v. *Fowler*, 56 Texas, 45; *Larson* v. *R. R. Co.*, 43 Minnesota, 423; *Ragon* v. *Ry. Co.*, 97 Michigan, 265; *Perigo* v. *Ry. Co.*, 52 Iowa, 276; *Evansville Ry.*

*Co.* v. *Henderson,* 134 Indiana, 636; *Linton Coal Co.* v. *Parsons,* 15 Ind. App. 69.

Mr. *Edward H. Thomas* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

This is a review of a judgment of the Supreme Court of Arizona, rendered prior to Statehood, affirming the judgment of one of the territorial district courts, in an action brought by Hall against the Railway Company to recover damages for personal injuries. Hall was in the employ of the Company as chainman, and on April 23, 1907, was engaged, with another employé named Ryan, in measuring distances for locating mile-posts along the line of its railway. For purposes of transportation they used a three-wheeled gasoline car or "velocipede" furnished by the Company. This car had two wheels on the right-hand side, over which were the engine, a seat for the use of the operator, and a seat in front for another person; the third wheel—or "pony wheel," as it was called—was a small wheel on the left-hand side nearly opposite the front wheel on the right-hand side, and fastened to the machine by a bar extending across. The wheels, like the ordinary car wheel, had inside flanges designed to keep the treads of the wheels upon the tracks. On the day mentioned, Hall and Ryan were upon this car traveling upon the line of railway, Ryan operating the machine and Hall sitting in front. While running at a speed of from eight to twelve miles an hour the car suddenly left the track, going to the left, the side on which the "pony wheel" was located. Hall was thrown in front and run over, sustaining severe injuries. The ground relied upon to support a recovery of damages from the employer was that the flange upon the third wheel was worn and cracked in a manner that rendered its use dangerous; that the defect was of such a

character that it would have been discovered in the course of reasonable inspection; and that by reason of this defect the machine left the track. The company denied negligence on its part, set up contributory negligence, and averred that Hall knew or had opportunity to know the condition of the car, and that he assumed the risk of injury resulting from the alleged defect. Upon the trial the jury returned a verdict in his favor for $10,000. The Company moved for a new trial, and, pending this motion, Hall voluntarily remitted $5,000 from the amount of the verdict. Thereafter the trial court denied the motion, and entered judgment in Hall's favor for $5,000 and costs. From this judgment and from the order denying the motion for new trial the Company appealed to the territorial Supreme Court, which affirmed the judgment, as already stated. 13 Arizona, 270.

This writ of error is sued out by the Railway Company and the sureties upon the *supersedeas* bond that was given for the purposes of the appeal to the territorial Supreme Court. A reversal of the judgment is sought because of alleged trial errors.

At the outset we lay aside certain assignments of error filed in this court that are designed to raise various questions which do not appear, from anything in the record before us, to have been presented to the territorial Supreme Court for its consideration. It is inadmissible for this court to consider errors, not fundamental in their character, which might have been but were not brought under review in the appellate court below; for it is that court's judgment which is alone subject to our review. The impropriety of allowing a party, conceiving himself to have suffered from an erroneous ruling of a trial court in a matter not jurisdictional, nor essential to the foundation of the action, but involving a mere matter of procedure, to invoke the judgment of this court thereon, without availing himself of the opportunity for a review

thereof in the appropriate appellate court of the Territory, has been repeatedly pointed out. *Montana Railway Co.* v. *Warren,* 137 U. S. 348, 351; *San Pedro & Cañon Del Agua Co.* v. *United States,* 146 U. S. 120, 136; *Jordan Mining Co.* v. *Société des Mines,* 164 U. S. 261, 264.

The local practice required specific assignments of error, and treated errors not thus assigned as being waived. Arizona Rev. Stat. 1901, pars. 1523 and 1586; Supreme Court Rules 3 and 6; 4 Arizona, ix and xi; 35 Pac. Rep. vi and vii; *Daggs* v. *Phoenix Nat'l Bank,* 5 Arizona, 409, 415; *County of Santa Cruz* v. *Barnes,* 9 Arizona, 42, 49; *Bail* v. *Hartman,* 9 Arizona, 321, 327. The transcript filed here does not contain the assignments of error below, so that there is nothing to show what errors were assigned or relied upon in the territorial Supreme Court, except as they receive particular mention in its opinion. Con-. fining our attention to these, the questions presented are the following:

First, it is contended that the trial court ought to have instructed the jury to return a verdict in favor of the defendant, and this upon the ground that there was no evidence to sustain a recovery, unless it could be found in the proof of the defective condition of the flange of the "pony wheel"; it being at the same time contended to be a physical impossibility that this defect in the flange could have caused the accident. The wheel itself was in evidence as an exhibit, and it was testified that the inside of the flange, where it came next to the rail, was irregularly worn; or, as a witness put it,—"cut in different places so that it is very rough, and it would have a tendency (for a person to look at it) to show hard and soft places in the wheel." This witness declared that this condition of the wheel would cause it to "bounce and leave the track." Another witness testified that there were "three gouged out places" in the flange, and (in effect) that if one of these should strike a protruding joint between rails

"the sharp edge of the flange would mount that rail and go off." It is insisted, however, that by the uncontroverted testimony the car, at the time of the accident, was traveling upon a curve towards the left, and was therefore necessarily impelled by centrifugal force towards the right, so that the defective flange was drawn away from the rail and was performing no function. The theory is that the centrifugal force must have kept the right-hand wheels constantly bearing upon the inside of the outer or right-hand rail, and that therefore in the absence of some extraneous cause, it was impossible for the car to be thrown toward the left. We are unable to say as a conclusion of law, that such a car, while running upon a curve towards the left, at a speed of from eight to twelve miles an hour, and with interior flanges upon the right-hand wheels preventing it from leaving the track on that side, would not be occasionally thrown with a lurch away from the right-hand rail and against the opposite rail, even were the car at the time traveling upon a constant curve. But however this may be, there was evidence from which the jury might reasonably infer that at the point where the car left the track it was just leaving the curve and going upon a tangent. At this point it might naturally be subjected to a lurch that would throw its weight with momentum against the left-hand rail and thus bring into operation the tendency of the "pony wheel" to mount the rail because of the worn condition of the inside of the flange. And, as already mentioned, the car in fact went off the track towards the left. Therefore, upon this question, the case was properly submitted to the jury.

The motion for direction of a verdict seems to have been rested upon the additional ground that the alleged defect was so obvious that its existence must have been known to the plaintiff, and that he therefore assumed the risk. There was no direct evidence that he knew of the defect,

and it does not appear to have been a part of his duties to inspect the machine or the wheel, or to look after their condition. He had been employed for only three or four days in work that required him to ride upon the car, and at the utmost it was a question for the jury whether the defective condition of the wheel was so patent that he should be presumed to have known of it. And then, the question whether the defect was such as to render the use of the car dangerous was in dispute at the trial; hence, it could not be properly held that the risk was indisputably obvious, even to one who knew of the defect. It is quite clear, therefore, that a verdict could not properly have been directed in favor of the defendant upon the ground that the plaintiff, in using the car, had assumed an obvious risk.

There was a request for instructions to the effect that the plaintiff assumed the risk of injury from defects which he knew, or by the exercise of ordinary care in the discharge of his duties might have known, or which he had opportunity to know. These instructions the court refused to give, but charged the jury upon this question —"The true test is not in the exercise of ordinary care to discover dangers, by the employé, but whether the defect is known or plainly observable by him. An employé is not charged by law with the assumption of a risk arising out of defective appliances provided by his employer, unless his employment was of such a nature as to bring to his attention and cause him to realize and comprehend the dangers incident to the use of such appliances." This, we think, was a correct instruction under the circumstances of the case. An employé assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employé has a right to assume that his employer has exercised proper care with respect to providing a safe

place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employé becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it.  Moreover, in order to charge an employé with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it.  *Union Pacific Railway Co.* v. *O'Brien,* 161 U. S. 451, 457; *Texas & Pacific Railway* v. *Archibald,* 170 U. S. 665, 671; *Choctaw, Oklahoma &c. R. R. Co.* v. *McDade,* 191 U. S. 64, 68; *Texas & Pacific Ry. Co.* v. *Swearingen,* 196 U. S. 51, 62; *Burns* v. *Delaware & Atlantic Telegraph Co.,* 70 N. J. Law, 745, 752.

The next error alleged is the refusal of the trial court to permit Ryan, the operator of the car, to testify to a remark made, concerning the condition of the wheel, on the day before the accident.  Ryan had testified that he noticed the alleged defect at the time referred to; that he, and Hall, and one Regna, and somebody else, were present; that a conversation was had in which Regna made a remark with respect to the crack in the wheel; and that this remark was made in his natural tone of voice while Hall was less than twenty yards away and within hearing distance, and so that he could have heard it if he had been listening.  It was not shown that Hall made any comment upon the car or the wheel, or made any answer to Regna's remark, or took any part in the conversation. Plaintiff's counsel objected to the admission of the conversation on the ground that it had not been established that Hall heard it, and this objection was sustained.

It is insisted that the conversation was admissible as

proving notice to Hall of the condition of the wheel; and so it was, provided it appeared that he heard it. Whether he did hear it, was of course a question of fact. Plaintiff in error contends that this should have been submitted to the jury, with an instruction that if they believed Hall heard the conversation they might take that into consideration in determining whether he knew the condition to the wheel and the effect of using it in that condition.

We agree that the testimony was such as to render it a matter of doubtful inference whether Hall heard the conversation; but we think this question of fact was one to be determined by the trial court, and not by the jury. Questions of the admissibility of evidence are for the determination of the court; and this is so whether its admission depend upon matter of law or upon matter of fact. And the finding of the trial judge upon such a preliminary question of fact is not subject to be reversed on appeal or error if it be fairly supported by the evidence, as it is in the case before us. *Bartlett* v. *Smith*, 11 M. & W. 483, 485; *Doe, dem. Jenkins* v. *Davies*, 10 Ad. & El., N. S. 314, 323; *Spring Co.* v. *Edgar*, 99 U. S. 645, 658; *Stillwell Mfg. Co.* v. *Phelps*, 130 U. S. 520, 527; *Inland & Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 551, 559; *State* v. *Monich*, 74 N. J. Law, 522, 526; *State* v. *Tomassi*, 75 N. J. Law, 739, 743; *Gorton* v. *Hadsell*, 9 Cush. 508, 511. And see *Tayloe* v. *Riggs*, 1 Pet. 591, 597.

Finally, it is insisted that there was error in entering judgment in favor of the plaintiff for $5,000, after the residue of the verdict of $10,000 was remitted pending the motion for new trial. The argument is that the voluntary remission of so large an amount by the plaintiff was an admission that the verdict was excessive; that an excessive verdict may not be cured by a remitter where the amount of the damages cannot be measured by any fixed standard or determined with certainty; that a verdict so excessive

is conclusive evidence that it was the product of prejudice on the part of the jury, and that this vice goes to the entire verdict, and not merely to the excess. The practice, however, is recognized by the Civil Code (Ariz. Rev. Stat. 1901, pars. 1450 and 1451), which permit any party in whose favor a verdict or judgment has been rendered to remit any part thereof, after which execution shall issue for the balance only of such judgment. In *Northern Pacific R. R. Co.* v. *Herbert*, 116 U. S. 642, 646, an action in a territorial court to recover damages for personal injuries that necessitated the amputation of a leg, there was a verdict in favor of the plaintiff for $25,000, a motion for a new trial on various grounds, among others that the damages were excessive, and the court ordered that a new trial be granted unless plaintiff remitted $15,000 of the verdict, and, in case he did so, that the motion should be denied. He remitted the amount, and judgment was entered in his favor for the balance, which the Supreme Court of the Territory affirmed. This court held that the matter was within the discretion of the court; and this even without the sanction of a statute. The constitutional question involved was reëxamined in *Arkansas Cattle Co.* v. *Mann*, 130 U. S. 69, 73, and the decision in the *Herbert Case* was adhered to, it being held that the practice under criticism did not in any just sense impair the right of trial by jury.

In *Southern Pacific Co.* v. *Tomlinson*, 4 Arizona, 126, 132, and in *Southern Pacific Co.* v. *Fitchett*, 9 Arizona, 128, 134, the general practice was sustained by the territorial Supreme Court. In the former case, however, it was said (4 Arizona, 132) that "if it is apparent to the trial court that the verdict was the result of passion or prejudice, a *remittitur* should not be allowed, but the verdict should be set aside. In passing upon this question the court should not look alone to the amount of the damages awarded, but to the whole case." In the *Fitchett*

*Case*, it appearing that the trial court was of the opinion that more than half of the damages awarded for the appellee's injured feelings were excessive, the Supreme Court held that evidently the verdict was not the result of cool and dispassionate consideration, and that the question of the proper sum to be awarded ought not to have been determined by the trial court, but should have been submitted to the determination of another jury. In the present case (13 Arizona, 276) the majority of the court declared they were not prepared to adhere to the views expressed in the *Fitchett Case:* that while there is authority for the position that in no case of unliquidated damages should the court permit a remission where the verdict is excessive, without the consent of the defendant, the great weight of authority supports the practice; citing the decisions of this court already referred to; and declaring that while, if it appears that the verdict is tainted with prejudice or passion, and does not represent the dispassionate judgment of the jury upon the question of the right of the plaintiff to recover, a new trial should be granted, yet the trial court is in a better position to determine this than the appellate court, so that its determination should ordinarily be accepted. We see no ground for disturbing this decision.

*Judgment affirmed.*