## NORTHERN CENTRAL COAL CO. v. BARROWMAN.

(Circuit Court of Appeals, Eighth Circuit. October 29, 1917.)

No. 4662.

1. MASTER AND SERVANT ⬡278(10), 280, 281(3)—INJURIES TO SERVANT—ACTIONS—EVIDENCE.

In an action for the death of an electrician employed in a mine and killed by the fall of the cage in the hoisting shaft up the side of which he was making his way, evidence *held* to warrant a finding that the master was negligent and the electrician was not negligent and did not assume the risk.

2. MASTER AND SERVANT ⬡124(1)—INJURIES TO SERVANT—NEGLIGENCE.

The duty of an employer towards employés is not discharged by merely furnishing suitable machinery and appliances in the beginning, but comprises a continued oversight and inspection to keep them so; hence a mining company, though the brake shoes which it supplied to control the operation of cages in the hoisting shafts had originally been sufficient, is negligent where it allowed the use of the brake shoes after they had so worn as to be insufficient.

3. MASTER AND SERVANT ⬡270(10)—INJURIES TO SERVANT—ACTIONS—EVIDENCE.

In an action for the death of an electrician employed in a mine, who was killed by the fall of a cage in the hoisting shaft up the side of which he was climbing to reach an air shaft, where he was going to make a necessary change in electric cables, it was contended that the removal of timbers from another cage which counterbalanced the one that fell and so lightened the other cage that the brakes failed to hold the one that fell, was not permitted until it was believed the electrician was in place of safety and had finished working on the electric cables in the air shaft, during which work he used the cages for assent and descent. *Held*, that evidence that the falling cage struck others working at the bottom of the shaft was admissible to show that no particular care was exercised for the electrician.

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. MASTER AND SERVANT ⫸241—INJURIES TO SERVANT—NEGLIGENCE.

Where the two cages in the two shafts of a mine counterbalanced one another, an employé who in the discharge of his duties proceeded to climb up the side of the shaft under one of the cages, which was elevated while timbers were being removed from the other cage cannot be deemed negligent, the brakes being set to prevent movement of the cages, where the difference of the weight of the two cages caused by the removal of timbers from one of them was not much greater, if at all, than would be reasonably expected in the customary movement of miners and the hoisting of coal, which movements were controlled by the brakes.

5. MASTER AND SERVANT ⫸205(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

An employé has a right to presume that his employer has performed his primary duty with respect to machinery and appliances, and does not assume risks which by the exercise of ordinary care he might have ascertained.

6. TRIAL ⫸260(1)—INSTRUCTIONS—REFUSAL.

Refusal of instructions covered by the general charge is not error.

7. TRIAL ⫸240—INSTRUCTIONS—REFUSAL.

Argumentative charges are properly refused.

8. TRIAL ⫸234(2), 244(2)—INSTRUCTIONS—REFUSAL.

Instructions giving undue prominence to some features of the evidence or predicated on an erroneous statement of the evidence are properly refused.

9. APPEAL AND ERROR ⫸110, 724(3)—REVIEW—MATTERS REVIEWABLE.

The denial of a motion for new trial and the overruling of a motion in arrest cannot be assigned as error, nor is a general assignment that, upon pleadings, evidence, and record, verdict should have been for plaintiff in error available.

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Anna Barrowman against the Northern Central Coal Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Charles H. Elgin, of Centerville, Iowa (C. F. Howell, Howell, Elgin & Howell, all of Centerville, Iowa, and Hunter & Chamier, of Moberly, Iowa, on the brief), for plaintiff in error.

W. M. Bowker, of Nevada, Mo. (Hamp Rothwell, of St. Louis, Mo., and Sheppard & Sheppard, of Poplar Bluff, Mo., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. The Northern Central Coal Company complains of a verdict and judgment in favor of Mrs. Barrowman in an action brought by her for the negligent killing of her husband in its mine in Randolph County, Missouri. The deceased was in the service of the defendant company as an electrician and motor operator, and was killed by the fall of a cage in a hoisting shaft. The negligence charged was, among other things, in the use of a defective brake designed to control the movement of the cable on which the cage was suspended. The defenses were a general denial and the deceased's negligence and assumption of risk.

The shaft at the mine was divided by partitions into three parts called the north shaft, the south shaft, and the air shaft. Cages were operated in the first two shafts for the workmen and materials and the hoisting of coal. In the air shaft there was an electric cable supplying power to a motor that ran in the entries below. Wire cables, one attached to each cage, extended to wheels or pulleys above the mouth of the shafts and thence at a tangent to a drum in the engine house about 40 feet distant. These two cables were arranged inversely on the drum in the engine house so that when it revolved one cable was wound up and the other was unwound, with the result that when one cage came up the other went down in the shaft. The revolution of the drum was controlled by a brake actuated by a lever. The brake consisted of a metallic casting equipped on the inner or friction side with wooden brake shoes which by use of the lever were clamped in an encircling way about the drum to retard or stop its motion. The revolution of the drum could also be controlled by direct application of the steam. There was a turnbuckle designed to take up the wear of the wooden brake shoes so they would continue to engage the drum. When one of the cages rested on the surface at the mouth of the shaft the other would be about 25 feet from the bottom. Their weights, unloaded, substantially balanced.

The accident occurred on a Sabbath. Mining operations had been suspended, and the day was devoted to various repairs for their resumption the following day. The heavy framework of the south cage was to be replaced; the sump at the bottom of the shafts was to be cleared of water and the fragments of coal that had fallen there; and the electric cable in the air shaft was to be repaired and the motor and operating electric current tested. Different men were delegated to these several tasks, the last one being the duty of the deceased and a helper. Certain parts of the tasks were being done at the same time. In repairing the electric cable the deceased used the cages in the hoisting shafts for descent and ascent, and it was not until he was through with that part of his work, as he thought and so reported, that the south cage was placed at the surface and the men went to work upon it. This left the other cage hanging in the north shaft about 25 feet from the bottom. The testing of the motor and the electric current would ordinarily have kept deceased in an entry quite a distance from the bottom of the shafts, but he found that in splicing the electric cable in the air shaft it had been shortened too much so he went to the north shaft and was in the act of climbing up the side to get into the air shaft when the south cage at the surface, from which about three-fourths of the weight in timber had been taken, suddenly went up and the cage above him plunged down and killed him. One if not both of the two men working in the sump were also struck.

[1, 2] Though the record of the trial is not voluminous there are 58 assignments of error, almost all of which are argued with equal emphasis. In the first place it is urged that there was not sufficient evidence of defendant's negligence; that the evidence showed the deceased himself was negligent in going under the suspended cage;

and that he knew enough of the machinery and its operation and the work then being done at the mine to charge him with assumption of the risk. There was ample evidence sustaining the verdict against the defendant on all those points. The jury were fully justified in finding that the accident was caused by the negligent use of insufficient brake shoes. They had been allowed to wear down from an original thickness of about four inches to an inch or less in places, a wear too great to be taken up by the turnbuckle, and there was evidence that immediately after the accident an attempt to use them showed their insufficiency. When the accident occurred the engineer was not in the engine room, and steam was not being applied to hold the drum. Reliance was had wholly upon the setting of the lever and the brake. The duty of an employer is not discharged by merely furnishing suitable machinery and appliances in the beginning, but comprises also a continued oversight and inspection to keep them so.

[3] Much is made in argument of the testimony of defendant's witnesses, particularly that of the mine foreman, but it conveys the impression of an ingenious attempt to adjust what occurred to an assumed but nonexistent thoughtfulness for the safety of the deceased. For example, it is said that the removal of the timbers of the south cage was not begun until it was believed the deceased was back in the entry in a place of safety. But it is just as credible, if not more so, that no such consideration was given the deceased. While working on the electric cable he was using the cages, and until he was through, one of them could not well be placed at the surface for repairs. Again, as bearing on the contention mentioned, it may be recalled that the fall of the cage endangered the lives of the men working in the sump beneath it and known to be there. Anticipating the effect of this upon the jury, counsel for defendant asked an instruction that a belief on their part of negligence towards others (the men in the sump) should "not be given the slightest weight in determining as to whether the company was guilty of negligence toward the deceased Barrowman." The instruction was rightly denied. The evidence as to the men in the sump tended at least to show that the claim at the trial of a selective, discriminating care for the deceased was an afterthought.

[4] It is said the deceased was negligent in quitting his place of safety and going under the suspended cage when he knew work was being done upon the other cage at the surface. There was evidence that in the performance of his duty he had to go back to the electric cable in the air shaft, that the latter had been closed some distance from the bottom by boards nailed across, and also held down by refuse, and that the only way of access was up the hoisting shaft to a point above the closing. It is true he knew of the cage above him and of the timbers being removed from the other cage, but that did not signify a condition of danger if the machinery and appliances for holding them were in order as he had a right to assume them to be. The difference in the weight of the two cages caused by the removal of structural timbers from one of them was not much greater, if at all, than would reasonably be expected in the customary movement of

miners and hoisting of coal. If the holding appliances in the engine room were sufficient for the latter, there was nothing in the removal of the timbers to advise the deceased of a danger. The duty as to the sufficiency of such appliances was upon the defendant, not upon the deceased. Again, defendant seeks to charge the deceased with that care for self-protection which ordinarily keeps workmen from beneath a cage that is being repaired. But that is because of the danger of falling tools and materials. The cage that fell upon him was not being repaired, and no such danger threatened him.

[5] Instructions were asked that deceased assumed the risk if he could have known of the danger by exercise of ordinary care. We have frequently held that an employé is under no such obligation, but has a right to assume that his employer has performed his primary duty with respect to the machinery and appliances. That is also the rule of the Supreme Court. Gila Valley, etc., R. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521.

[6-8] Some instructions asked were sufficiently covered by the general charge; others were argumentative. Some gave undue prominence to certain features of the evidence. "Singling out a single matter and emphasizing it by special instruction as often tends to mislead as to guide a jury." Perovich v. United States, 205 U. S. 86, 92, 27 Sup. Ct. 456, 51 L. Ed. 722. Others were predicated upon incomplete or erroneous statements of the evidence including reasonable inferences.

[9] Several of the instructions asked and refused were directed to the denial of a motion for a new trial, one to the overruling of a motion in arrest of judgment, and one states generally that upon the pleadings, evidence, and record the verdict should have been for the defendant. Such grounds are not properly assignable under the federal practice. It is not necessary to review the other assignments in detail. We think the verdict was for the right party, and that nothing occurred in the trial court erroneously prejudicing the defendant.

The judgment is affirmed.