## PORT OF NEW YORK STEVEDORING CORPORATION v. CASTAGNA.

(Circuit Court of Appeals, Second Circuit. March 6, 1922.)

No. 221.

1. **Master and servant ⬤120—Stevedore must furnish employees with safe place to work.**

An employing stevedore is required to furnish its employees with a safe place in which to perform their work and with safe implements or tools in connection therewith.

2. **Master and servant ⬤124(4)—Employing stevedore must make reasonable inspection of vessel's equipment.**

Though an employing stevedore is not required to make a thorough inspection of equipment for work furnished by a vessel, he is required to make a reasonable inspection, and where the slightest inspection would have disclosed that a board holding up a pile of dunnage was rotten, the stevedore is liable for injuries to an employee caused by the breaking of that board and the fall of the pile of dunnage.

3. **Master and servant ⬤124(4)—Employing stevedore's inspection of vessel's equipment must be such as reasonable stevedore would make.**

An employing stevedore must make such inspection of the equipment furnished by the vessel as a reasonably prudent stevedoring company would have made under like circumstances, and, if such casual inspection indicated danger, it was required to go further and make a more careful inspection, in order to eliminate the danger.

4. **Master and servant ⬤217(7)—Risk of dangers ascertainable by inspection not assumed.**

The fact that the danger was one which could be ascertained by casual inspection by the employing stevedore of the equipment furnished by the vessel does not establish that the employee had assumed the risk of the danger, since the employee owed no duty to inspect, but assumed the risk of injuries only if the defect was plainly observable, or so obvious that an ordinarily prudent person under the circumstances would have appreciated it.

5. **Master and servant ⬤217(24)—Risk of fall of dunnage not assumed.**

Though a servant of a stevedoring company would assume the risk of stepping or stumbling into a hatchway, which he could see was unguarded, he did not assume the risk of being knocked into the hatchway by the fall of a pile of dunnage not properly secured.

6. **Admiralty ⬤20—Injury of stevedore's employee is maritime tort.**

The negligent injury of an employee of a stevedoring company on a vessel, resulting from the employer's failure to inspect equipment furnished by the vessel, is a maritime tort, which might have been the subject-matter of admiralty jurisdiction, since the locality of the tort determines whether or not it is maritime.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Admiralty ⊜31—Contributory negligence does not bar the recovery for a maritime tort.**

A person injured on a vessel through a maritime tort is not debarred from all recovery because of the fact that his own negligence contributed to his injuries.

**8. Admiralty ⊜31—Suing at law for maritime tort does not make contributory negligence a bar.**

The right to recover damages for a maritime tort, irrespective of contributory negligence, is a right, and not a matter of procedure, nor governed by the choice of the forum, so that the fact that an injured employee sought his remedy at common law, instead of in admiralty, does not make his contributory negligence a bar to recovery.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Michael Castagna against the Port of New York Stevedoring Corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

Certiorari denied 257 U. S. ——, 42 Sup. Ct. 463, 66 L. Ed. ——.

Writ of error to the District Court for the Southern District of New York to review a judgment of $20,040.25 entered upon a verdict in favor of plaintiff below. The parties will be referred to as they were aligned below.

Plaintiff is an alien. Defendant is a New York corporation in the business of stevedoring. Plaintiff was a longshoreman. In the circumstances hereinafter related he was precipitated into the open hold of the steamer Lake Fackler, upon which he was working for defendant; the latter, through its employees, being engaged in loading barrels of cement into the hold of the vessel. The vessel, which was not owned by defendant, was lying alongside a pier in Jersey City. As a result, plaintiff suffered injuries of the gravest character.

For the purpose of packing the barrels in tight, dunnage was used. This dunnage had been previously piled by the sailors on the vessel, but had not been inspected by defendant. During the early part of the work the men found sufficient dunnage in the hold, but later more dunnage was needed, and plaintiff went to Facciola, the foreman, and asked him where he could get additional dunnage. The foreman told plaintiff to go on deck, but plaintiff found none there, whereupon the foreman told him to go to the 'tween-deck, which was immediately over the hold, where the foreman said there was "lots of dunnage * * * close to the hatch." Plaintiff climbed up the ladder to the 'tween-decks and saw the dunnage piled in a rack.

The manner of piling was that two or three long boards were stuck behind one of the sweatboards of the vessel, and large quantities of the dunnage were stacked up on the rack thus made. The particular pile approached by plaintiff stuck out 5 or 6 feet from the side of the ship, and extended about 3 feet from the deck to a point opposite plaintiff's chin or head. It was testified that the top of the pile was about 8 feet above the deck. The distance from the side of the vessel to the open hatchway was 12 feet 9 inches. This hatchway was flush with the deck and entirely unprotected. What is known as the life line, which is customarily stretched around such an opening, was not present.

One of the sticks which held up the pile was, according to the testimony of the first officer of the Lake Fackler, "rough stuff, very light stuff." One of the plaintiff's fellow workmen saw the broken board as it lay on the deck after the accident, and testified that "it was a rotten board." As plaintiff grasped the first piece of dunnage, this rotten piece of wood, which acted as a support, gave way. The whole pile thereupon fell and struck plaintiff full in the chest. He attempted to "grab something"; but there was nothing to grab, and thus he was thrown into the open hold, where he fell upon the pile of cement barrels.

The foregoing version of the accident is, of course, that for which there is support in the testimony adduced on behalf of plaintiff. In respect of several questions of fact, there were contradictions put forward by the testimony of the witnesses for defendant. With the differences in these versions we are not concerned, as it is necessarily assumed that the jury accepted the story of plaintiff and his witnesses.

Bertrand L. Pettigrew, of New York City (Walter L. Glenney, of New York City, of counsel), for plaintiff in error.

David M. Fink, of New York City (Harold R. Medina, of New York City, of counsel), for defendant in error.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] 1. The first point urged by defendant is that he did not neglect any duty which he owed to plaintiff in regard to the inspection of the pile of dunnage wood, and therefore that the complaint should have been dismissed. There would, of course, have been no duty on the part of defendant, if the defect were a latent one, not discoverable by such an inspection as a reasonably prudent employing stevedore would make under like circumstances. It is now too elementary to require citation of cases that the employing defendant was required to furnish plaintiff with a safe place in which to perform his work and safe implements or tools in connection therewith.

[2] The fact that the dunnage wood was originally piled by the sailors on the vessel is a matter of no consequence. When defendant took charge of the loading of the cement barrels, he at once became the master, both in respect of the place where his employees worked and the implements or tools (other than those furnished by themselves) with which they worked. Defendant made no inspection whatever of the dunnage, and yet the slightest inspection might have disclosed the fact of the existence of this rotten piece of wood, which was the original cause of the accident which ultimately hurled plaintiff down the hatch.

The case is quite different from Liverani v. Clark & Son, 231 N. Y. 178, 131 N. E. 881. In that case the hoisting falls were hooked into an iron ring bolt fastened in the ship's deck. During the progress of the work the ring bolt broke, and the pulley block struck Liverani, causing his death. The defective condition of the ring bolt could have been ascertained according to the testimony of an expert only under the hammer test. The court said:

"Under such circumstances, what was the duty which the law placed upon the stevedore with relation to the use of the ship and its parts? In the absence of any condition to excite suspicion, or to suggest defects or danger, the stevedore might assume the safety of the appliances, and that due care had been used by the shipowner to keep and maintain them in reasonably safe condition."

Having stated the foregoing, the court was careful to point out:

"*This does not mean that the stevedore could use the tackle or the ship's parts blindly and without looking at them,* but that, if appearances indicated no danger or defects, an inspection by tests for latent imperfections was not required of it. To expect a stevedore in the absence of these indications to

minutely examine masts, booms, and bolts, and apply to them expert scrutiny before permitting his servants to use them, would be unreasonable." (Italics ours.)

From the foregoing it is plain that the court did not hold that the stevedore had no duty to make any inspection, but merely that, under the particular facts of the case, certain instructions and refusals to in-struct were error. In commenting upon certain parts of the trial court's charge, the court again indicated that it was directing its at-tention to the character of inspection which the court below had not properly stated in its charge, for the court said:

"Up to this point the court did not explain what this inspection would con-sist of, whether it would be a look at the ring bolt to see if it appeared safe, or whether it would be the hammer test, suggested by the expert, which would reveal latent defects."

In brief, and without further analysis, there is nothing in the Liver-ani Case, which negatives the necessity of inspection.

[3] The kind and character of inspection applicable to the case at bar is well stated in the extract (noted in the margin)[1] from the ad-mirable charge of Judge Grubb in this case. The question on the evi-dence in this case was one of fact for the jury under proper instruc-tions, and these were given.

[4] 2. It is contended that error was committed when the trial judge charged the jury that, if the plaintiff was knocked into the hold by the falling of the pile of dunnage, then it was for the jury to say whether or not he assumed the risk of such accident. This contention seeks to place plaintiff in a dilemma; the argument being that, if the defect was one which a proper inspection would disclose, then plaintiff neces-sarily assumed the risk as matter of law. This argument, however, is based upon a misapprehension of the theory underlying the duty of inspection and the theory underlying the doctrine of assumption of

[1] "Still the stevedore owed some duty of inspection. The stevedoring com-pany, the defendant here, owed some duty of inspection, while not the same exacting duty that the ship owed. That measure of duty is for you, gentle-men, to determine—what a reasonably prudent stevedoring company would have done under like circumstances, where it had put its men to work on a ship where a condition of danger might have been created by the ship itself, to find out whether it had complied with that duty, under the circumstances in this case; that is, whether it made such an inspection as a stevedoring com-pany under those circumstances would have been required by the law to do; that is, such an inspection as a reasonably prudent stevedoring company would have made under like circumstances. That is for you to determine from the evidence and from the surrounding circumstances. If it made a casual inspection, and there was anything in the appearance of the pile or the sup-ports of the pile that would indicate danger, then it was required to go fur-ther and make a more careful inspection, in order to eliminate the element of danger, if there was such element—following the casual inspection. They had the duty to make, as I say, such a reasonable inspection as would have been made, in your opinion, by a stevedoring company, a reasonably prudent stevedoring company—under similar circumstances, where it did not create the danger itself, but the shipowner created it. If it did that, if it made that kind of inspection, or if you believe that that kind of inspection, although not made, would have revealed any danger in the piling of the dunnage, then the stevedoring company would not be liable, even though the ship might have been."

risk. The duty of inspection arises out of the duty of the master to provide a safe place for the work of the employé, a duty which may not be delegated. The doctrine of assumption of risk rests upon the implied contract of the servant that he assumes responsibility for injuries arising out of a defect "plainly observable," or "so obvious that an ordinarily prudent person under the circumstances would have appreciated it." As we have recently noted a tendency to misunderstand the doctrine of assumption of risk which prevails in the national courts, we note in the margin a quotation from Gila Valley Ry. Co. v. Hall, 232 U. S. at pages 101 and 102, 34 Sup. Ct. 229, 58 L. Ed. 521.[2]

Plaintiff was not called upon to inspect the pile of lumber. He had the right to assume that it was in good order and safe, unless, as above stated, the rotten board was plainly observable, or so obvious that an ordinarily prudent person would have appreciated the defect, and hence the danger. There is a marked difference between the knowledge which an employer acquires through proper inspection and the lack of knowledge of an employé, due to the fact that he has not made an inspection and that he is only chargeable when the defect is of a character which comes within the definitions of the McDade and Gila Valley Cases, supra. See also Taber v. Davis, 280 Fed. 612, decided by this court February 20, 1922. It was therefore for the jury in the case at bar to determine from the evidence whether in point of fact plaintiff had assumed the risk of the rotten plank.

[5] 3. It is contended, also, that plaintiff assumed all risk incident to the absence of guards around the hatch, and that the following instruction to the jury of the trial judge was erroneous:

"If he was knocked into the hold, involuntarily, by the falling of the dunnage, then you could not say that he assumed the risk of knowing that the hatch was unprotected. It would have to be shown that he also knew of the danger of being knocked into the hold by the dunnage, because, if he did not know that, then he was assuming no risk of getting into the hold or hatch by its merely being unprotected. The defendant would have to also show that he knew the danger of being struck by the dunnage and knocked into the hold."

If in the pursuit of his work, plaintiff had tripped or fallen into the hatch, obviously such a result would have been due to one of the risks which was to be expected in connection with plaintiff's work, and such

---

[2] "An employé assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employé has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employé becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employé with the assumption of a risk, attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety, or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it." Choctaw, Oklahoma & Gulf R. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; Gila Valley Ry. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521.

risk, of course, was assumed; but the risk of being unexpectedly thrown into the hatch, because of the prior unexpected falling of a pile of defective dunnage, due to a rotten board, certainly cannot be regarded as a risk incident to the business of the master and the work of the employé. The argument for the defendant loses sight of the primary cause of the accident, to which we must always return for a clear understanding of the results which flowed from that primary cause.

While the McDade, Gila Valley, and Taber cases, supra, were railroad cases, the Supreme Court nevertheless laid down or restated the general principles of assumption of risk. In referring to the charge of the trial court in the McDade Case, Mr. Justice Day pointed out that the charge was more favorable to the railroad than the law required, as it exonerated the railroad from fault, if, in the exercise of ordinary care, the employé might have discovered the danger, and he said:

"Upon this question the true test is not in the exercise of care to discover dangers, but whether the defect is known or plainly observable by the employé."

In the case at bar, the defect was not known, and in view of the fact that the question was one for the jury, as we hold, supra, we must assume that it cannot be said as matter of law that the defect was plainly observable by plaintiff. Falling down the hatch was thus due to an unknown, and, according to the verdict, an unobservable, defect, and to say that an employee assumes the risk of falling down an open hatchway, due to an unknown and unobservable defect or danger, would be to introduce a novel doctrine into the law, and one opposed to the steady modern trend of judicial decision.

4. It is also contended that error was committed in charging the jury that, if plaintiff was guilty of contributory negligence, such contributory negligence only went to the question of reduction of damages, and in refusing to charge the jury that, if the plaintiff did not exercise reasonable care, he could not recover. The court fully and properly charged the jury as to the necessity of finding defendant guilty of negligence before plaintiff could recover, and as to the assumption of risk. So far as we are able to ascertain, there was no evidence of contributory negligence, and this part of the court's charge was doubtless due to extra caution. The question of contributory negligence seems on this record to be academic.

[6] In any event, however, the tort in the case at bar was a maritime tort, which might have been the subject-matter of admiralty jurisdiction. That the locality of a tort determines whether or not it is maritime is now so well settled that it is necessary only to refer to Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157.

[7] In The Max Morris, 137 U. S. 1, 11 Sup. Ct. 29, 34 L. Ed. 586, it was held that, where a person is injured on a vessel through a maritime tort arising partly from the negligence of the officers of the vessel and partly from his own negligence, and sues the vessel in admiralty for damages for his injuries, he is not debarred from all recovery

because of the fact that his own negligence contributed to his injuries. Carter v. Brown, 212 Fed. 393, 129 C. C. A. 69.

[8] The right to recover irrespective of contributory negligence is a right, and not a matter of procedure, nor is it governed by the choice of the forum. In the case at bar, plaintiff has sought his remedy at common law to obtain redress arising out of a maritime tort. He entered the common-law court with the same right as he would have entered the admiralty court. That was the right to recover, irrespective of his own negligence, provided, of course, he could show the negligence of his employer, and this right of plaintiff sprang into existence because he suffered a maritime tort. The trial judge was peculiarly familiar with the question, for it was he who wrote the opinion in Carter v. Brown, supra, and our view is that his charge as to contributory negligence was sound.

There are no other questions which, in our opinion, require comment. Judgment affirmed.