## SOUTHERN RY. CO. v. HOBBS et al.

Circuit Court of Appeals, Fourth Circuit.
October 15, 1929.

No. 2864.

John M. Robinson, of Charlotte, N. C., for appellant.

H. L. Taylor, of Charlotte, N. C. (T. L. Kirkpatrick, of Charlotte, N. C., on the brief), for appellee Hobbs.

E. T. Cansler, of Charlotte, N. C. (Cansler & Cansler, of Charlotte, N. C., on the brief), for appellee Ford Motor Co.

Before PARKER, Circuit Judge, and GRONER and SOPER, District Judges.

GRONER, District Judge. J. B. Hobbs, the plaintiff below, was employed by the Southern Railway Company as an extra switchman, and was injured on the evening of December 9, 1926, while at work on the top of a freight car then being moved in interstate commerce by the railway company from within the Ford Motor Company's plant at Charlotte, N. C. He sued the railway company and the Ford Company as joint tort-feasors, and at the trial recovered judgment against the railway company alone.

This is an appeal by the railway company, in which both Hobbs, the plaintiff below, and the Ford Company, joint defendant below, are made appellees. The Ford Company has moved to dismiss the appeal as to it. The facts are these:

In 1924 the Ford Company constructed a plant at Charlotte, N. C. At its request, and at its expense, the railway company built a spur track from its main track to the plant. From this point to a point some 900 feet inside the building, the track was constructed by the Ford Company, and at the same time the Ford Company constructed a line of light fixtures, suspended from the ceiling of the building and immediately over the center of the track. It was customary for the railway company to deliver daily to the Ford Company a number of loaded cars, which were backed by an engine into the building, un-

loaded and reloaded, and then removed by the railway company for delivery to destination. The injury is alleged to have occurred when the cars were being moved out of the plant. The operation of moving the cars generally occurred after dark, and was accomplished by backing the engine up to the string of cars, which it was intended to haul out of the building.

There were two switchmen. One followed the engine, and the other would walk back along the sides of the cars to be certain that the couplings were made and that the brakes were off. When this was done, he would give a signal to the engine, and the movement out would begin; the switchman generally mounting the rear car, and riding out on the train. On the night of the injury it was Hobbs' duty to see to the couplings and the release of the brakes. When the engine, with three cars attached, had been backed up and coupled to the car nearest the entrance to the building, Hobbs started back towards the "butting block," where the last car of the string was located, and, having reached that point and ascertained that the forward movement was in order, gave the signal and the train was immediately put in motion. Hobbs testified that he climbed on the top of the car, and had walked some 8 or 10 feet forward, when a light fixture, attached to the ceiling over the center of the track, struck him in the face and knocked him out of balance, and before he could catch himself he was thrown across the rear end of the car and onto the track, as a result of which he sustained serious injuries.

The theory of the plaintiff's case was that, although plaintiff had been in the plant on four or five occasions prior to the time of his injury, he neither knew of nor had been warned of the danger of coming in contact with the ceiling lights while standing on the top of a moving car; that the lights were not lit, and the place itself was dark; that at the time of his injury he was riding on a car considerably higher than the ordinary car, and that by reason of this fact, when he straightened up and walked forward, as was usual and proper, the distance between the walkway on top of the car and the bottom of the fixture was not sufficient for his clearance, and his injury resulted. The railway company defended on the ground that the plaintiff was familiar with the way and manner in which the track was constructed, the work was done, and the lights were located, and that, with such knowledge, plaintiff voluntarily continued to work, and thereby assumed the risk of injury, and also that he

was guilty of contributory negligence in not taking reasonable and proper care and caution for his own safety, and in failing to observe his surroundings and so conducting himself as to avoid injury. On these conflicting issues, the case was submitted to a jury, who found against the railway, and judgment was rendered accordingly.

The railway has filed 20 separate assignments of errors, relating almost wholly to the charge of the court to the jury, and an additional ground for reversal based upon the alleged inconsistency of the verdict and judgment in releasing the Ford Company, and at the same time holding the railway company solely responsible for the injury. We have carefully considered the various exceptions to the charge to the jury given by the learned district judge, and we think the charge as given fairly stated the law applicable in the circumstances, and was as favorable to the defendants as they, or either of them, might properly ask.

█ The first three assignments are predicated on the refusal of the court to direct a verdict for the defendants. We think there was no error in this respect. The evidence most favorable to the plaintiff shows that, while plaintiff had worked with the crew engaged in shifting cars in the Ford plant on four or five occasions prior to the injury, he was not advised or warned of the dangerous location of the light fixtures above the tracks. As a matter of fact, long use of the building and track had shown there was no danger to be anticipated, except in the use by the railway of an unusually high car. For a switchman standing on the top of a car of ordinary height, the distance was sufficient to allow him to pass under the lamp fixture without coming in contact with it. The evidence tends also to show that, during the first few years the spur track was used, the cars were smaller, and were loaded with "knocked-down" automobiles, but that later this method was changed and larger cars required.

The evidence is not clear as to precisely when the railway company began to furnish these higher and larger cars, or to what extent they were furnished; but, on the other hand, it is quite clear that no warning was ever given its brakemen, and particularly the plaintiff, of the changed situation, or of the dangers incident to same. On the other hand, however, the evidence does disclose the fact that the railway company recognized the increased danger to its employees, and a little less than a month prior to plaintiff's injury, its superintendent, in a letter to the Ford Company, called attention to the fact

that the lights in question did not properly clear men on the cars, and the Ford Company, on its part, promised, in reply, to take immediate steps "to have these lights moved to such a position that it will be next to impossible for any one standing on top of the cars to come in contact with them in any way." The lights were moved, but it was after the injury.

We think the plaintiff was not charged by law with the assumption of the risk arising from either the improper installation of the lamps, or the use by the railway company of an unusually high box car, without evidence that he had, or in the exercise of ordinary care should have had, knowledge of either or both. His obligation was to exercise reasonable care for his own safety, and this included the duty of discovering such dangers as were open and obvious, or in the exercise of due care were discernible to a man of his experience. He assumed the risks of such dangers as were ordinarily incident to the work in which he was engaged, but at the same time he had a right to assume that the company would not send him into a place of danger, which, in the exercise of ordinary care on its part, it could have remedied, and until it was shown, as it was not shown here, either that he knew of the danger, or that it was so obvious that an ordinarily prudent person, under the circumstances, should have observed it, he cannot be said in law to have assumed the risk. Gila Valley, G. N. & N. R. Co. v. Hall, 232 U. S. 94, 34 S. Ct. 229, 58 L. Ed. 521. The charge of the lower court on this subject was as favorable to the defendant as the facts warranted, and the doctrine of assumption of risks was fairly stated, and the assignments in this respect are therefore without merit.

The other assignments which need be noticed relate: First, to the refusal of the court to charge that, if the jury believed the railway company had requested the Ford Company to remedy the condition of the lights, so as to avoid injury to its employees in the performance of their duties, and the Ford Company had promised to do so, the railway company was justified for a reasonable length of time in assuming the condition would be satisfactorily changed, and would not be answerable to one of its employees injured in the meantime. We think the instruction was properly refused, for, notwithstanding the promise of the Ford Company, the railway company continued to owe to its employees the obligation not to send them without warning into a place of danger, and the failure of the Ford Company, whatever responsibility it may thus have assumed as between them, would not excuse the omission on the part of the railway company to discharge its legal duty. And, secondly, to the refusal of the court to charge that, because the light fixtures were erected by the Ford Company, the railway company had nothing to do with their location or maintenance, and hence would not itself be guilty of actionable negligence because of an injury sustained by one of its employees in coming in contact with one of the lights. The refusal so to charge was clearly right, if for no other reason, because it overlooks that feature of the case upon which the negligence of the railway company turns; that is to say, its use in the plant of a car of such size as to endanger contact with the lights to a person on top of same. The furnishing of the cars was the duty of the railway, and, except that they were suitable for the freight to be loaded into them, the Ford Company had no part or interest in their selection. The railway company, as shown by their complaint to the Ford Company, had recently inspected the location of the lights, and ascertained that an injury to one of its employees in the ordinary conduct of its business was likely to occur, unless their location was changed. This knowledge placed upon them the obligation either of warning the men required to go on top of the cars of the danger, or else of supplying cars which could be used without danger. In this instance, they did neither, and in these circumstances the verdict of the jury was clearly right.

Whether the Ford Company was also negligent we need not, under the circumstances, stop to inquire. The jury have exonerated it, and, even if this result appears to us not to be justified by the evidence, the railway may not now complain. The complaint stated a cause of action against both, but neither was an indispensable party, if the plaintiff had elected to proceed against only one. Each defendant filed its separate answer, and each in turn defended on the ground of a total lack of negligence against either. Neither charged the other with fault, and neither was prejudiced by the joinder of the other, or by the release from liability of one, and the finding of liability against the other. Both may have been liable, either together or separately, but neither may complain that the action was brought against both, or that it failed as to one of them.

The appellant contends that, since the jury acquitted the Ford Company of negligence, the judgment against the railway company should be set aside on the ground

that, if the Ford Company was not guilty of negligence, the railway company must also have been free therefrom. Negligence cases against joint defendants may be found, in which a verdict for one and against the other has been held so inconsistent as not to justify a judgment against the latter. Portland Gold Mining Co. v. Stratton's Independence (C. C. A.) 158 F. 63, 16 L. R. A. (N. S.) 677; Du Pont de Nemours & Co. v. Richmond Guano Co. (C. C. A.) 297 F. 580. But we think that these cases are not applicable, because, as we have already pointed out, the negligence of the railway company, as ascertained by the verdict of the jury, did not depend exclusively upon the negligence of the Ford Company in the installation of its lamps, but, on the contrary, was the direct act of the railway company itself, with knowledge of the danger, in furnishing a car for use in the Ford plant which did not permit the necessary clearance. The jury may well have found from the evidence that this action of the railway company did not involve lack of due care on the part of the Ford Company, since it had no knowledge that the car in question was to be used.

The case, as made, therefore, is *not* one in which the railway company was only negligent because the motor company was primarily negligent, and in which, therefore, the railway company was entitled to be exonerated because of the injustice of a recovery against it, and the release of the Ford Company, without whose negligence it might not have been held.

We think, upon a review of the whole case, all questions of fact and law were fairly submitted to the jury, and that the judgment should be and is affirmed.

Affirmed.