14733

RHODES v. SOUTHERN RY. CO.

(198 S. E., 382)

*Mr. John W. Crews,* for appellant,

*Messrs. Tompkins & Tompkins,* for respondent,

July 29, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This appeal is from an order of nonsuit and the questions presented are (a) whether any actionable negligence has been proven against the defendant-respondent, and (b) whether the injury complained of was caused by a risk assumed by plaintiff-appellant as part of his contract of employment. The case is under the Federal Employers' Liability Act.

In that it must go back for a new trial, we will but briefly touch upon the facts. Appellant, a one-armed man, had worked with respondent in a clerical position for over fifteen years, his duties having been increased several months prior to his injury to include heavier work of the kind he was performing at the time of his injury.

On the night of December 5, 1935, appellant was about his clerical work when a train of respondent, loaded in part with grapefruit and other perishables, on its way from Florida to northern points, stopped in Columbia for forty

minutes, according to schedule, during which time the appellant was required to check the cars and close or shut the doors containing perishables according to temperature conditions. Some of these were double doors, heavy and on runners, and the custom was to close both at the same time. Appellant had complained about needing help, had been promised it, and on the night in question the switchman had actually assisted with some of the cars, though not present at the time of the actual occurrence concerning which damages are claimed, and which happened only a few minutes before the train left Columbia.

Appellant testified that he put his shoulder against one of these double doors, pushed it, and after starting it hit the clamp, and instead of going on the inside it went on the outside due to the door being warped, the carriage bent, and the clamp in bad order; that the shock so injured him as to cause his discharge a short time thereafter as not being an able-bodied man. The car in question originated on the road of, and belonged to the Seaboard Air Line Railway Company, but was being hauled at the time by the respondent over its tracks. The occurrence was at night and the number of cars actually checked at this time is in dispute, but we may assume necessarily varies with each train, while the stop is according to schedule when practical. Clearly the respondent is charged with a reasonable inspection to afford a safe place to work; and equally clear an employee, working at night and against a schedule to be maintained where possible, cannot be charged with the same duty before proceeding with his work about the place and with the equipment furnished.

The true rule has been declared by the Supreme Court of the United States in quoting with approval from the case of *Gottlieb v. N. Y. L. E. & W. R. Co.,* 100 N. Y., 466, as follows:

" 'It will thus be seen that the utterances of judges as to responsibility of one company for the defective cars of another company drawn over its road are not entirely har-

monious and we think all the authorities hold that the company drawing the cars of another company over the road owes, in reference to such cars, some duty to its employees. It is not bound to take such cars if they are known to be defective and unsafe. Even if it is not bound to make tests to discover secret defects, and is not responsible for such defects, it is bound to inspect foreign cars just as it would inspect its own cars. It owes the duty of inspection as master, and is at least responsible for the consequences of such defects as would be disclosed or discovered by ordinary inspection. When cars come to it which have defects visible or discoverable by ordinary inspection, it must either remedy such defect or refuse to take such cars—so much at least is due from it to its employees. The employees can no more be said to assume the risk of such defects in foreign cars than in cars belonging to the company. The rule imposing this responsibility is not an onerous or inconvenient or impractical one. It requires, before a train starts, and while it is upon its passage, the same inspection and care as to all the cars in the train.' "

The opinion further quoted from a later New York case, *Goodrich v. New York Central & H. R. R. Co.,* 116 N. Y., 398, 401, 5 L. R. A., 750, announcing the same principle, and had this to say :

"We are of opinion that sound reason and public policy concur in sustaining the principle that a railroad company is under a legal duty not to expose its employees to dangers arising from such defects in foreign cars as may be discovered by reasonable inspection before such cars are admitted into its train." *Baltimore & Potomac R. Co. v. Mackey,* 157 U. S., 72, 39 L. Ed., 624.

This is determinative of the question of negligence, as to which an issuable question of fact is presented.

The inspection required as a duty on the part of the master is not only different, but a more careful inspection than that required on the part of the employee under the doctrine of assumed risks. As a practical illustration

we take the present case. If the employees at night were required to inspect the cars and equipment before going about their duties, no reasonable schedule could be maintained; and a duty primarily put upon the employer would be cast upon the employee, reversing the true rule. Hereabout the same Court has also spoken in *G. V. G. & No. R. Co. et al. v. John Hall*, 232 U. S., 94, 58 L. Ed., 521, as follows:

"There was a request for instructions to the effect that the plaintiff assumed the risk of injury from defects which he knew, or by the exercise of ordinary care in the discharge of his duties might have known, or which he had opportunity to know. These instructions the Court refused to give, but charged the jury upon this question:

" 'The true test is not in the exercise of ordinary care to discover dangers, by the employee, but whether the defect is known or plainly observable by him. An employee is not charged by law with the assumption of a risk arising out of defective appliances provided by his employer. unless his employment was of such a nature as to bring to his attention and cause him to realize and comprehend the dangers incident to the use of such appliances.' This, we think, was a correct instruction under the circumstances of the case. An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence it must appear not only that he knew (or is pre-

sumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated it." Citing numerous authorities.

It is the opinion of this Court that the trial Court erred in granting the motion for nonsuit, and the case is therefore remanded for a new trial.

Reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.

MR. JUSTICE CARTER did not participate on account of illness.